ALBANY,<br>Feb. 1825.

The People<br>v.<br>Richardson.

---

## THE PEOPLE *against* RICHARDSON, Clerk of Wayne County.

THE Attorney General having proceeded to enter an appearance for, and to take a default against the defendant pursuant to a rule obtained on an *ex parte* application for the purpose, at the last term, as mentioned in 3 Cowen's Rep. 357, S. C.

*J. C. Spencer*, for the defendant now moved to set it aside as irregular.

He read an affidavit, showing that no process had been served; and he did not know till this term, when he saw the note of the case in 3 Cowen, that the subject had even been mentioned to the Court; but supposed the Attorney General had entered a rule of course for the defendant to appear and plead as he would have done upon a *scire facias.* He contended that no citizen could be pursued to judgment, without due process of law, (1 R. L. 47, s. 2, 3;) and that a rule upon the party is not process applicable to a proceeding upon an information in nature of a *quo warranto.* The statute authorizing an information requires the relator to proceed in the manner usual upon such informations. (1 R. L. 108, s. 4.) These informations and the manner of proceeding upon them were well known to the common law before the statute passed, and must be adhered to. The information uniformly prayed process against the defendant. (Trem. P. C. 446. 429. 6 Wentw. Plead. 28, 29, &c.) This process is either a *subpœna* and *attachment,* or *venire facias* and *distringas.* (Bac. Abr. *Informations,* (D.) Com. Dig. *quo warranto,* (C. 2.) 2 Morg. Att's. Vade Mec. 106. *Rex* v. *Mayor, &c. of Hertford,* 1 Salk. 374. 2 id. 699, S. C. 1 Salk. 376, S. C. *The King* v. *Trinity*

The process, upon an information in nature of a *quo warranto,* is either a *venire facias* and *distringas,* or a *subpœna* and attachment.

It is irregular to proceed against the defendant by a rule to appear.

*House*, 1 Sid. 86. *The King* v. *Ginever*, 6 T. R. 594. 2 Kyd on Corp. 404, 438. *The Commonwealth* v. *Sprenger and others*, 5 Bin. Rep. 353.)

The defendant may not only be ousted of his office, but is subject to a fine, as in other criminal prosecutions for a misdemeanor. (*Rex* v. *The Mayor and Aldermen of Hertford*, 1 Ld. Raym. 426.) And the original process may be pursued to outlawry. (Com. Dig. *Utlagary*, 486, (B.) 2 Kyd on Corp. 438–9.) This seems to constitute the only distinction between the original process. If the people do not mean to proceed to outlawry, they may go on by *subpœna* and *attachment ;* otherwise by *venire facias, distringas,* &c. (2 Bl. Com. 318. 1 Chit. C. L. 350, 351.) Our statute is like the English ; and, of course, the cases of construction upon that apply here. The only cases in which a defendant shall be holden to answer without process, are actions against officers of the Court which are founded upon the theory of their being always in Court ; and of ejectment which is a mere creature of practice.

*Talcott*, (Attorney General,) admitted that the practice in England is to bring the defendant in by process. He said he would agree, that if that was to govern, and this Court had not, and could not establish a practice of their own, differing from the English, the proceedings in this case are irregular. The general rule of this Court, upon a proceeding by *scire facias*, sanctions a course much like the present. On the writ being served, and indeed on two writs returned *nihil*, the plaintiff may at once take a rule, of course, that the defendant appear and plead at a short day, or that his default be entered. This is mere matter of practice. The defendant by the rule, has had full notice, which is not always allowed upon a *scire facias*.

To be sure, said the Attorney General, the practice pursued in this instance has never been judicially passed upon by this Court, but it has long been followed ; and he mentioned the case of *The People ex rel. Jacob Barker et al.* v. *Leonard Kipp et al.* in which this Court (Aug. term, 1822) granted leave to file an information, in natue of a *quo warranto*, against

the defendants; and, on motion, made a rule at the same term, of which this is almost a literal copy. [Here the Attorney General read the rule in that case.]  To this rule, the late Chief Justice Spencer, who had held the office of Attorney General, had been a long time upon the bench, and, I need not say, was well acquainted with the practice of the Court in all its branches, assented.  And the learned counsel for the defendants did not think of questioning the regularity of the proceeding.

[SUTHERLAND, J. I think we had that very case before us, when we granted your rule at the last term.]

The 4th section of the statute, the title of which is, " An act for rendering the proceedings upon informations in nature of a *quo warranto* more speedy and effectual," provides that the defendant shall appear and plead as of the same term in which the information shall be filed, unless the Court shall give farther time.   One object of the statute was to avoid delay ; and its beneficial ends would be entirely defeated in many cases arising under our constitution and laws, the provisions of which make many offices of very short duration, if the prosecutor shall be put back to the dilatory process of the common law.

*Spencer*, in reply.  The Attorney General agrees with me that the settled practice of the King's Bench, which is also the law of this Court, requires that process should issue.  The statute gave a new remedy, unknown to the common law ; and if this remedy is to be more speedy, it is an additional reason why the party should have due notice upon process, at the hands of the proper officer of the Court.   It is said, the defendant must answer as of the same term at which the information is filed.   The provisions of the act may be inconsistent with themselves, but this will not warrant judicial legislation.  The act however, by a *more speedy* remedy, may mean merely that the 15 days between the test and return of process, required by some of the cases which I cited, be dispensed with.

ALBANY;
Feb. 1825.
―――――――
The People
v.
Richardson:

The case of a *scire facias*, mentioned by the Attorney General, is not an original proceeding. It is always founded upon a record, showing that the party had before been in Court, and confessed the debt, or that it had been adjudged against him in a course of litigation ; or it is intended, like a rule, to hasten proceedings in a cause wherein he has previously appeared.

Nor does it follow, because Mr. Kip and his associates, or other defendants, may have appeared gratuitously upon a rule, or slept upon their rights, that the whole practice is to be overturned.

*Cur. adv. vult.*

*Curia.* We have looked into the statute relative to informations in nature of a *quo warranto*, with the authorities which relate to it. The 4th section, (1 R. L. 108,) declares, that the Attorney General may proceed, after filing the information, in such manner as is usual in cases of informations in the nature of a *quo warranto*. We think this clause refers to the process by which the defendant is to be brought into Court ; and, at any rate, we see nothing in the statute which dispenses with the ancient practice in this respect. In England, the course is perfectly well settled. The Attorney General must proceed either by *venire facias* and *distringas*, or subpœna and attachment. This subject, it is true, has been several times before the Court ; but it was upon motions entirely *ex parte*, the matter passed without discussion, and the Court did not go into the law of the question which is now presented. Nothing was decided which has the force of binding authority. The subject is fairly open, and we see no necessity for departing from the English practice. The judgment by default must be set aside.

*Rule accordingly.*

(a) This proceeding by information in nature of a *quo warranto*, is becoming a common one; upon which many of the profession may be called to advise. Yet it is a subject of which our books of practice and of reference have taken but little notice ; and it is, most likely, owing to this, that the

most eminent practitioners must be many times at a loss what course to pursue, without great trouble in examining many books, through which the cases and entries are scattered. These considerations led me to suppose that not only would the report of new cases of practice on this head be acceptable to the profession, but that a summary classification and note of the older authorities might not be deemed useless.

*Cases in which this information lies.*] These will be seen, generally, by the statute, (1 R. L. 108, s. 4,) made to regulate the proceedings; though the power of the Court to grant the information was not derived from this act. It was intended merely to regulate the proceedings, in the cases mentioned by it. (Bull. N. P. 211.) For the common law power, as well as that conferred by the English statute, see Bull. N. P. 210, 211, 212; Com. Dig. *Quo Warranto,* (A,) (B;) 2 Morg. Att'ys Vad. Mec. 103–4–5, and the cases there cited. Also, 3 T. R. 596, 599, n *a.*; 2 East, 308; 6 T. R. 560; 6 East, 359; 5 T. R. 85; 4 East, 337; 3 T. R. 596; 4 id. 240, n.; 3 East, 119; 4 East, 327; 6 East, 356. In *The King* v. *Highmore,* (5 B. & A. 771,) an information was granted to try the right to the office of bailiff; though not a corporate office. The words of our statute are broader than the English, as to the kind of office or franchise, for the usurpation of, or intrusion into which the remedy is given. The English statute is recited in Bac. Abr. *Informations,* (D;) 2 Hawk. P. C. ch. 26, s. 14, 15, 16. The statutes of this state to regulate the proceedings, and to extend the statute of amendments and jeofails to these proceedings, are in 1 R. L. 108–9, s. 4, 5, 6, and 121, s. 10.

In Massachusetts, this information lies to inquire into the election of an officer or member of a corporation, on the relation of any one interested in, or injured by the election or admission. (*Commonwealth* v. *Union Fire Ins. Co. in Newburyport,* 5 Mass. Rep. 230.) So against officers appointed by the executive, as well as those holding corporate offices or franchises. (*The same* v. *Fowler,* 10 id. 290. 11 id. 339, S. C.) The jurisdiction belongs to the Supreme Judicial Court. (Id.) Where one is appointed by the governor to an office which does not exist, this information lies. (Id.) The writ of *assize of novel disseisin* does not lie to recover the office of Chief Justice of a district. (*Whittington* v. *Polk,* 1 Harris & Johnson's Rep. 236.)

In this state it has been decided, that where a person is in office by color of right; the remedy is not by mandamus to admit another having lawful claim; but by information in the nature of a *quo warranto.* (*The People* v. *The Corporation of New York,* 3 Johns. Cas. 79. *The People* v. *Hillsdale and Chatham Turnpike Co.* 2 Johns. Rep. 190, also cited post.) An information lies against an incorporated company, for carrying on banking operations, without authority from the legislature. (*The People* v. *The Utica Ins. Co.* 15 Johns. Rep. 358.) For privileges and immunities of a public nature which cannot be legally exercised without a legislative grant are franchises, although they never existed in the people, or could be exercised by them in their political capacity. (Id.) An information was filed

to try the election of a county clerk in New Jersey, and the right of a de-liberative assembly to reconsider their proceedings discussed and passed upon by the court. (*The State* v. *Foster*, 2 Halst. Rep. 101.)    This information will lie against a corporation or an individual.    (Cas. K. B. 225.  Bull. N. P. 212.)

*In what Courts.*]  In England this information is filed in the King's Bench, (2 Sull. Lect. 168–9.)  In Massachusetts, in the Supreme Judicial Court.    (*Commonwealth* v. *Fowler*, 10 Mass. Rep. 290.)    In this state, in the Supreme Court.

*Nature of the proceeding.*]  Though a criminal proceeding in form, yet in substance it is but a civil one.    (*Rex* v. *Francis*, 2 T. R. 484.  2 Kyd on Corp. 439.    *The Commonwealth* v. *Browne*, 1 Sergt. & Rawle's Rep. 385, per Tilghman, C. J.)

*When leave to file this information will be granted.*]    It is not granted of course, but depends on the sound discretion of the Court upon the circum-stances of the case.    (Bac. Abr. *Informations*, (D.)    *The King* v. *Treve-nen*, 2 B. & A. 339.)    *The People* v. *Sweeting*, 2 Johns. Rep. 184.)    The statute, (1 R. L. 108, s. 4,) mentions leave of the Court—so of the En-glish statute—as to leave under those statutes, the following cases have been decided:—It will usually be granted, where the right, or the fact on which the right depends, is disputed and doubtful.    (*Rex* v. *Latham*, 3 Burr. 1485.    1 Bl. Rep. 468.)    Or where the right turns upon a point of new or doubtful law.    (*Rex* v. *Carter*, Cowp. 58.    *Rex* v. *Godwin*, Doug. 397.)    Or where there is no other remedy.    (Cas. K. B. 225.  Bull. N. P. 212.)    It does not seem to be a reason for refusing an information, that the objection to the defendant's title arises from a defect in the title of some other person, through whom he claims, provided the application be made within proper time, (8 Mod. 216;) for it is admitted that where judgment of ouster has been given against a person through whom a title is claimed, that may be a reason for granting an information to impeach the derivative title, (2 Str. 1109 ; Andr. 389 ; 5 Burr. 2601 ; Cowp. 500, *arguendo;*) and that the title of the defendant may be impeached by an issue introduced on the record, respecting the title of the person under whom he claims, though the latter has not been ousted on an information filed against him.    (Id.)    It may, or may not be possible to impeach the ori-ginal right on which the derivative title depends, by an information filed against the person who claimed to exercise that right.    Whatever may be the case, where that may be done, but in fact has not been done, it has been decided, that where it cannot be done, the original right may be impeach-ed in an information against the person whose derivative title depends upon it.    (*Rex* v. *Mein*, 3 T. R. 596 ; 2 Kyd on Corp. 435–6.    It is no ob-jection to an information against an alderman, that the relators who op-posed the election, afterwards made no opposition to his election to the principal office of magistracy, which required that the defendant should be an alderman as a qualification for the higher office ; or that they at-tended at, and concurred in corporate meetings, whereat he presided or at-tended in his official character.    (*The King* v. *Clarke*, 1 East, 38.)    Nor is it an objection, that the relators in an information which would operate, in

its effect, to dissolve the corporation, attended corporate meetings at which the mayor was elected, whose election they impeach on the ground that the corporation was dissolved by the loss of an integral part; and that they voted for another candidate, and afterwards attended other corporate meetings at which such mayor presided. (*The King* v. *Morris.* *The same* v. *Stewart*, 3 East, 213.) So a previous knowledge of the fact, in the person on whose affidavit the motion is made, will not be a ground for refusing the information, if he was under no obligation of remonstrating against the proceedings, if he be in fact merely a witness, not relator; as in the case of an application on the affidavit of the town clerk. (*Rex* v. *Binsted*, Cowp. 75.) Nor will the relator's concurrence in the election of the defendant, be any ground for refusal, if the objection was matter of substance, not of form in the election. (*Rex* v. *Smith*, 3 T. R. 573.) And where the application is made on the affidavit of several persons, all of whom, but one, concurred in the election of the defendant, if that one will avow himself the relator, and render himself responsible for the costs, his being joined with others who concurred in the election will be no reason for refusing the information. (*Rex* v. *Simmons*, 4 T. R. 223.) Where the application is made for the purpose of enforcing a general act of parliament, which interests all the corporations in the kingdom, it is no objection that the party applying is not a member of the corporation. (*Rex* v. *Brown*, 3 T. R. 574, n.) The abandonment of a former information, for the same cause, is, of itself, no reason for refusing an information, as that may have been by collusion. (*Rex* v. *Bond*, 2 T. R. 771.) The Court will make the rule for an information in nature of a *quo warranto* absolute, though the party has, since the rule obtained, resigned his office, and his resignation has been accepted. (*Rex* v. *Warlow*, 2 M. & S. 75.) Rules to show cause or informations were granted, in various cases, in 8 Mod. Rep. which it may be useful to consult, by way of illustration, at pages 132, 135, 165–6, 35, 36, 215–6, 234.

*When it will not be granted.*] If the defendant can show that his right has already been determined by mandamus, (2 Hawk. P. C. ch. 26, s. 9;) or that it depends on the right of those who voted for him, which has not yet been tried, (id;) or that the person upon whose right the defendant's title depends has enjoyed his franchise so long, that the Court would not permit it to be impeached in this mode of proceeding, the information will be denied. (*Rex* v. *Stevens*, 1 Burr. 433. *Rex* v. *Peacock*, 4 T. R. 684.) So if the defendant's right have been acquiesced in for a length of time, (Bac. Abr. *Informations*, (D.) The time within which a corporate office might be impeached by a *quo warranto*, was, by the common law, indefinite; it varied with the circumstances of each particular case. (*Rex* v. *Powell*, 8 Mod. 165. *Rex* v. *Pike*, id. 286, cited 1 T. R. 4, n. and 3 T. R. 311. *Rex* v. *Williams*, 1 Str. 677; and vid. 1 T. R. 1. Id. 3, and note there. 3 id. 310, 311. 2 T. R. 767.) And it was, for some time, thought better that it should be unsettled, (*Rex* v. *Latham*, 3 Burr. 1485–6, per Ld. Mansfield.) At length, however, the Court set a limit to their discretionary power, and confined it, in analogy, to other cases of limitations, within twenty years, (*Winchelsea causes*, 4 Burr.

1962, 2022, 2121. *Rex* v. *Rogers*, id. 2523 ;) and, at length, to six years. (*Rex* v. *Dickens*, 4 T. R. 282. *Rex* v. *Peacock*, 4 T. R. 684. R. G. Hil. T 1791. 4 T. R. 284.) And the last period was confirmed by Parliament; (Stat. 32, Geo. 3, 58, and vid. *Rex* v. *Autridge*, 8 T. R. 467.) If the person from whom the title was derived be dead, it seems the information should not be granted; (*Rex* v. *Spearing*, 1 T. R. 4, n.) or the parties have acquiesced. (*The King* v. *Stacey*, 1 T. R. 4, per Buller, J.) So where so great a number of derivative titles would be affected by a judgment against the defendant, that it would tend to dissolve the corporation. (*Rex* v. *Carter*, Cowp. 59, per Ld. Mansfield.) So where the franchise no way concerns the public, (as all those which relate to the government of a corporation, or the election of members of parliament ; case of the *Borough of Horsham*, Hil. 30 Geo. 3. 3 T. R. 599, n. *Rex* v. *Mein*, id. 598–9. *The King* v. *Bingham*, 2 East, 308; and fairs and markets, &c. are said to do, 2 Hawk. c. 26, s. 9 ;) but is wholly of a private nature, as a coney-warren, (*Rex* v. *Sir William Lowther*, 2 Ld. Raym. 1409. 1 Str. 637, S. C. *Ibbotson's case*, Cas. Temp. Hardw. 248. *Rex* v. *Caan*, Andr. 15. 1 Bott. pl. 326. *Rex* v. *Shepherd*, 4 T. R. 381.) So where two sets of churchwardens are sworn in. (*Rex* v. *Dawbeny*, 2 Str. 1196.) And quære as to fairs and markets, (*Rex* v. *Marsden*, 3 Burr. 1812. 1 Bl. 579. *Ibbotson's case*, Cas. Temp. Hardw. 248. Hardr. 162, *arguendo*.) So, if the election by which the defendant claims is agreeable to the charter, or he has never acted under the election, or there has been but a mere claim, and no user of the franchise. (*Rex* v. *Ponsonby*, Say. Rep. 245. *Rex* v. *Whitwell*, 5 T. R. 85.) But swearing in is a user, though it be defective. *The King* v. *Tate*, 4 East, 337.) So, if it appear that the time for which the officer was elected will expire before the inquiry can have any effect. (*The People* v. *Sweeting*, 2 John. Rep. 184. *Commonwealth* v. *Athearn*, 3 Mass. Rep. 285.) So where the persons on whose affidavits the motion is grounded, have lain by without recently prosecuting, though with full knowledge of the fact, (*Rex* v. *Wardroper*, 4 Burr. 2024, per Aston, J.) ; or have concurred with the rest of the corporation in a resolution not to take advantage of a flaw in the defendant's title, (*Rex* v. *Mortlock*, 3 T. R. 300 ;) or where the prosecutor, stands in the same circumstances with the defendant, (per Ld. Kenyon, Ch. J. in *Rex* v. *Bond*, 2 T. R. 771 ; *Rex* v. *Cudlipp*, 6 T. R. 503 ;) or where the persons in whose name the application is made, are wholly connected with the corporation. (*Rex* v. *Stacey*, 1 T. R. 3, and note there.) So where the application is manifestly frivolous and vexatious ; and the Court will, in such case, discharge the rule with costs. (2 Str. 1039. 2 Burr. 780. 3 T. R. 301.) The Court will not grant an information to try the validity of an election to the office of churchwarden, because it is no usurpation on the crown. (*Rex* v. *Shepherd*, 4 T. R. 381.) So where the relator had agreed not to enforce a by-law upon which he now grounded his attempt to impeach the defendant's title. (*Rex* v. *Mortlock*, 3 T. R. 300.) It is a valid objection, that the relator was present, and concurred, *at the time* of the objectionable election, though he was then ignorant of the objection. (*The King* v. *Trevenen*, 2 B. & A. 339.) So where the relator is indigent, and there are strong reasons to suspect that

ne is applying not on his own account, or at his own expense, but in collusion with a stranger. (Id.) So where the circumstances throw suspicion on the motives of the relator, and the consequence will be to dissolve a corporation. (Id.) The Court will not grant this information to enforce a claim for damages against a turnpike company, done to the relator's property in laying out a road, though the act require the company to pay the damages. (*The People* v. *The Hillsdale and Chatham Turnpike Co.* 2 John. Rep. 190.) A secondary and incidental ground for the information, resorted to by way of forlorn hope, after the original and main ground has failed, will be listened to with distrust ; and the Court, in their discretion, may disregard it, though it might be a good ground if brought before the Court in the first instance. (*Rex* v. *Osbourne*, 4 East, 327, 336.) *Quo warranto* will not lie against a county treasurer, to show by what authority he holds the office, if he has been, *de facto*, elected by the Justices in Quarter Sessions. (*Rex* v. *The Treasurer of Herefordshire*, 1 Chit. Rep. 700.) Rule to show cause why information in nature of a *quo warranto* should not be filed against an ordinary, discharged. (*Hays, relator*, v. *Harley, incumbent*, 1 Rep. Con. Court, South Carolina, 267.) It will not be granted against a person exercising a corporate franchise, to which he has been legally elected, though he has committed an offence which might amount to a forfeiture, until he has been removed by the corporation. (*Rex* v. *Heaven*, 2 T. R. 772.) It was denied on the oath of a town clerk, who swore that he had not sworn the defendants ; because he had entered that he had sworn them on the record. (*Rex* v. *Williams*, 1 Str. 677.)

*The affidavits on which the motion is founded.*] These should not be entitled in any cause. (*The King* v. *Pierson et al.* Andr. 313, per Page and Probyn, Js. *King q. t.* v. *Cole*, 6 T. R. 642, per Lord Kenyon, Ch. J. *Haight* v. *Turner*, 2 John. Rep. 371–2.) On an affidavit, that the relator *did not believe* that the defendant had been duly sworn in, though the affidavit to show cause did not expressly allege that he had been sworn, but stated that he *appeared, by the corporation books, to have been sworn in*, the Court denied an information. (*The King* v. *Newling*, 3 T. R. 310.) If sufficient appear to draw the merits of an election to a corporate office in question, the Court will grant the information, though the deponents swear only to their information and belief that the defendant was admitted a freeman, &c. this not being denied by the defendant, on showing cause. (*The King* v. *Harwood*, 2 East, 177.) The form of the affidavits for the rule to show cause are given at length in *The Commonwealth* v. *Douglass*, (1 Bin. Rep. 77.) If the affidavit in support of the rule omit a material fact, which is stated in the affidavit filed on the other side, the latter may be read by the prosecutor in support of his rule. (*Rex* v. *Mein*, 3 T. R. 596.) On application upon the ground that the defendants were elected contrary to the provisions of a particular charter, the affidavit must state that the charter was accepted, or that the usage has been in conformity to it ; and the affidavit being ill for omitting this, the Court refused leave to amend it, but put the party to a new application. (*The King* v. *Barzey et al.* 4 M. & S. 253.)

*The rule thereupon.*]   It is usual to proceed by rule to show cause, on *ex parte* affidavits; but the Court have a discretion as to this; and where the whole case had been disclosed by the defendants' answers in Chancery, and the answers of others favorable to them, touching the subject of the application, the Supreme Court looked into the answers, and granted a rule for an information in the first instance.   (*The People, ex rel. Barker,* v. *Kip et al.* 1 U. S. Law Journal, 286.)

*Rule to inspect books.*]   Upon a rule to show cause, the Court will grant a rule for the inspection of books belonging to the corporation.   (Bull. N. P. 210.

*Affidavits on showing cause.*]   These may be entitled.   (*The King* v. *Pierson et al.* Andr. 313, per Page and Probyn, Js.   *R. King q. t.* v. *Cole,* 6 T. R. 640, 642, per Ld. Kenyon, Ch. J.)   Or they may not be entitled, at the defendant's choice.   (*R. King q. t.* v. *Cole,* 6 T. R. 642, per Ld. Kenyon, Ch. J.)   If these affidavits, and the cause shown, do not put the matter beyond dispute, the rule will be made absolute.   (Bull. N. P. 210.)   The Court will judge, from all the circumstances of the case, who is the real relator. Per Ld. Kenyon, Ch. J. in *Rex* v. *Cudlipp,* 6 T. R. 509.)

*Showing cause.*]   Unless the cause shown be such as puts the matter beyond dispute, the Court will make the rule absolute for the information, in order that the question concerning the right may be properly determined.   (Bull. N. P. 210.)   But, it seems, the Court will not grant the rule for an information on the last day of the term   (*Rex* v. *Davies,* Say. Rep. 241.)

*The Information.*]   A sufficient variety of English precedents will be found in 6 Wentworth's Pleadings, 28 to 234.   These are, for usurping or intruding into the offices or stations of aldermen, p. 28 ;  of mayor, 40, 50, 107, 161, 119, 214;  of bailiff of a borough, 60 ;  master of the company of coopers, 63 ;  burgess, 71, 146, 154, 184, 188, 194, 200, 209, 225, 234; commonalty steward, 81 ;  freeman of a borough, 84, 137 ;  of a city, 132 ; commoner, 175 ;  freemen of Coventry, 180.   The 2 Kyd on Corp. 403, gives this as the outline of the English form:

"Such an one, Attorney General of the Lord the King, who sues for the Lord the King, in this behalf, comes here into the Court of our said Lord the King, before the King himself, at Westminster, on, &c. in this same term, and, for the said Lord the King, gives the Court here to understand and be informed, that ————, for the space of ——— now last past, and more, have used, and still do use, without any warrant or royal grant, the following liberties and franchises, to wit: ————.   Of all which liberties, privileges and franchises aforesaid, the said ———, during all the time aforesaid, have usurped, and still do usurp upon the said Lord the King, to the great damage and prejudice of his royal prerogative, whereupon the said Attorney General of the said Lord the King, prays the advice of the Court in the premises, and due process of law against the said ——— in this behalf to be made, to answer to the said Lord the King, by what warrant he claims to have, use and enjoy the liberties, privileges and franchises aforesaid."

This is the form, whether the information be brought for an usurp.ttion without any original title, or for a subsequent forfeiture, where the original title is not disputed.    (Id. and vid. Co. Ent. 527, 564, *per tot. quo. war.* v. *Mayor, &c. of London.*)

The form of the information in *The People* v. *Kip et al.* (see 1 U. S. Law Journal, 288 to 290,) was thus:

" Samuel A. Talcott, Attorney General of the People of the state of New York, who sues for the said people in this behalf, comes here into the Supreme Court of Judicature of the said people, before the Justices thereof, at the Capitol in the city of Albany, on Thursday, the 8th day of August, in the year of our Lord one thousand eight hundred and twenty-two, in this same term of August; and for the said people of the state of New York, at the relation of Jacob Barker, Thomas Hazard, jr. and Thomas M. Huntington, all of the city of New York, in the county of New York, according to the form of the statute in such case made and provided, gives the Court here to understand and be informed, that in and by a certain act of the legislature of the state of New York, passed on the twenty-third day of March, in the year of our Lord one thousand eight hundred and twenty-one, all such persons as then were, or thereafter should become, stockholders, of a certain company, associated under the style of the " North River Bank of the city of New York," were ordained, constituted, and declared to be, from time to time, and until the first day of July, in the year of our Lord one thousand eight hundred and forty-two, a body corporate and politic, in fact and in name, by the name of " The President, Directors and Company of the North River Bank of the city of New York ;" and that, in and by the said act, it was also, amongst other things, enacted, that the stock, property, affairs, and concerns, of the said corporation, should be managed and conducted by thirteen directors, being stockholders and citizens of the said state, and to be elected from time to time, as in and by the said act was enacted and provided; and that the President, Directors and Company of the North River Bank of the city of New York, by force of the said act, now are, and for one year last past, and more, have been a body corporate and politic, in fact and in name, by the name of " The President, Directors and Company of the North River Bank of the city of New York ;" that is to say, at the city of New York, and in the county of New York aforesaid; and that L. K. merchant, and D. R. merchant, J. C. M. druggist, &c. all late of the city of New York, in the county of New York aforesaid for the space of thirty days now last past, and more, without any legal warrant, grant, or right, whatsoever, have used and exercised, and still do use and exercise, the office of directors of the said corporation, to wit, at the city of New York, and in the county of New York aforesaid; and that each of them hath used and exercised, and still doth use and exercise, the office of director of the said corporation, to wit, at the place and in the county aforesaid; and that the said L. K., D. R., &c. for and during all the time last above mentioned, without any legal warrant, grant or right, whatsoever, at the city of New York, and in the county of New York, have claimed, and still do claim, to be directors of the said corporation; and each of them hath claimed, and still doth claim, to be a director of the

ALBANY,
Feb. 1825.

The People
v.
Richardson.

said corporation, and to have, use and enjoy, all the liberties, privileges and franchises, to the office of directors of the said corporation belonging and appertaining; which said offices, liberties, privileges and franchises, they, the said L. K., D. R., &c., for and during the whole time last above mentioned, upon the said people have usurped, and still do usurp, and each hath usurped, and still doth usurp, that is to say, at the city of New York, and in the county of New York aforesaid, in contempt of the people of the state of New York, and to their great damage and prejudice, and also against their dignity.

(Filed August 10th, 1822.)

*Samuel A. Talcott,* Attorney General."

The 15 John. Rep. 362, also gives the form of the information, &c., at length, in *The People* v. *The Utica Insurance Co.* See, also, the substance of an information in Connecticut, (*The State* v. *Tudor,* 5 Day's Cas. Err. 329.) It need not show a title in the people to have the particular franchise exercised; but calls on the intruder to show by what authority he claims it; and if the title set up be incomplete, the people are entitled to judgment. (15 John. 388, per Spencer, J., who cites 2 Kyd on Corp. 399, and 4 Burr. 2146-7.) The act to incorporate the Utica Insurance Company, passed March 29, 1816, (sess. 39, c. 52,) does not authorize the company to institute a bank, issue bills, discount notes, and receive deposits, such powers not being expressly granted by the legislature, and not being within their intention, as collected from the act of incorporation; and the company having assumed and exercised those powers, they were held to have usurped a franchise; and on an information in nature of a *quo warranto* being filed by the Attorney General, judgment of *ouster* was rendered against them. (Id. 358.) In Massachusetts, the Solicitor General, in an information against one for usurping a public office, recited an order of the House of Representatives, requesting him to file such information, and stated that he filed it by virtue of, and in compliance with this authority; and, on the ground that the legislature had no right to give this construction, it was moved to quash the information; but the Court held, that the act of filing the information should be deemed to emanate from the official authority of the Solicitor General, who might, *ex officio,* file the information. (*Commonwealth* v. *Fowler,* 10 Mass. Rep. 290.) The form of the information is given in that case, with the plea in bar. (Id. p. 295.) Every citizen who pays taxes, has such an interest as will authorize an information in the nature of a *quo warranto,* to be filed at his suggestion, to inquire by what authority the collector holds his office. (*Commonwealth* v. *Browne,* 1 Sergt. & Rawle's Rep. 382.) It may be filed to inquire into the election or admission of an officer or member of a corporation, when moved for by any person interested in, or injured by such election or admission, if it were unduly made. (*Commonwealth* v. *The F. & M. I. Co. in Newbury port,* 5 Mass. Rep. 230.) It may also be moved for by the Attorney General, *ex officio,* or on the authority of the legislature, but it is confined to one of these three ways. (Id.) One appointed by the executive to an of-

ALBANY,
Feb. 1825.

The People
v.
Richardson.

fice which does not exist, may be removed by information in nature of a *quo warranto*. (*The Same* v. *Fowler*, 10 Mass. Rep. 290.)

The general proceeding is by information for the King, by his Attorney General, against any usurper of franchises, &c. to show *quo warranto* he uses them. (Co. Ent. 527, b.) So against him who exercises a power unlawfully; as, if a Mayor, &c. admits to freedom persons who have no right; for there is no other remedy. (1 Salk. 374.) If the information be for using a franchise by a corporation, it should be against the corporation. (*The King* v. *Cusacke*, 2 Roll. Rep. 113, 115.) If for usurping to be a corporation, it should be against the particular persons. (Id.) But it will not lie at all, merely for encouraging such an usurpation. (*Rex* v. *Marsden et al.*, 3 Burr. 1812.) It will not lie on the relation of an individual against a corporation as a body. This should always be by, and in the name of the Attorney General. (*Rex* v. *The Corporation of Carmarthen*, 2 Burr. 869.) If, on the relation of a private person, it should be against the several individuals, to show by what authority they claim their respective franchises. (Id.) If the information be at common law, there is no relator, nor ought there to be judgment for costs, but only a *capiatur pro fine*. (Bull. N. P. 211.) It is not necessary to state in the information that leave of the Court was granted to file it. (Cowp. 501.) By the statute, one information may be filed to try the rights of different persons. (1 R. L. 108, s. 4.) A *quo warranto* was brought for vexation, upon forty-eight points, and the Court being moved in it, ordered that the prosecutor should waive that *quo warranto*, and should bring a new one, and therein insist on only three points, but that he might proceed to trial upon his new *quo warranto*, in such time as he might have done upon the old, (Hill, 22 Car. B. R.) to the end that he might not be delayed in his proceedings by being put to bring the new *quo warranto*. (2 Lill. Pr. Reg. 509, B.) On moving to file an information, the Court will judge from all the circumstances of the case who is the real relator. (Per Ld. Kenyon, C. J. in *Rex* v. *Cudlipp*, 6 T. R. 509.) It seems that though an information may be granted on the application of a stranger, yet he ought to make out a strong case. (*Rex* v. *Kemp*, 1 East, 46, n.) An information does not lie against a mere servant of a corporation, whose office does not affect any franchise, or other authority holden under the crown. (*Rex* v. *Bedford Corporation*, 6 East, 356.) .

*Consolidation.*] After rules have been made absolute for several informations, the Court will give leave to consolidate them at the instance of the defendants. (*Rex* v. *Foster*, 1 Burr. 573.) But, without the defendant's consent, the Court will not consolidate several distinct informations for several distinct offices; for there must be an information against each, to enable each to disclaim. (*Rex* v. *Warlow*, 2 M. & S. 75.)

*Of quashing the information.*] This cannot be done on motion, even with the consent of parties. (*Rex* v. *Edgar*, and *The Same* v. *Brickell*, 4 Burr. 2297.)

*The process.*] The principal case decides that this should be a *venire facias* and *distringas*, or *subpœna* and *attachment;* and some books speak indifferently of these two kinds of process. (Vid. 2 Kyd on Corp. 438.)

In the *Commonwealth of Pennsylvania* v. *Sprenger*, (5 Bin. 353,) the Court awarded a *venire*. In that state the 9 Ann. c. 20, had not been enacted as late as 1817. (3 Serg. & Rawle's Rep. 52.) In a note by Siderfin, (*Le Roy* v. *Trinity House*, 1 Sid. 86,) which is much referred to by the books, he says, it appears, on comparing the precedents in Coke's Entries, 527, 528, &c. that there is this difference between a *quo warranto* and an information in nature of a *quo warranto*, in respect to the process. Upon an information, it seems, the process shall be *venire facias* and *distringas;* but upon a writ of *quo warranto* it is summons ; and for default of appearance, that the liberties shall be seized. The 2 Kyd on Corp. 438, says, the process usually issued to bring the defendant into Court, is a writ of *subpœna*, and if that be disobeyed, an attachment ; but if the defendant cannot be served with a *subpœna*, it is said, the process is *venire facias* and *distringas ;* which looks as if a *venire* and *distringas* were to follow a *subpœna*; and for this he quotes Sid. 86, which he altogether misapprehends in this place ; and at a previous page, 404, he refers to Coke's Entries, the same authority on which Siderfin relies in his note, and says that, according to these entries, the process usually awarded against individuals is a *venire facias* which is followed by a *distringas ;* and in this he is right and according to the entry itself, which at 527, is an award of a *venire* against certain individuals named, who claim to be a body politic ; though from the hasty search which I have made, I do not find any entry of a *distringas.* These entries touching *quo warranto* are voluminous, and follow from p. 527 to 564, in very large double folio pages. At p. 536, I find the entry of a *distringas* as the first process against a corporation, viz. *The Mayor, Commonalty, and Citizens of London.* This is also mentioned in 2 Kyd, 404. The entry of the *venire* is thus immediately at the close of the information : "Whereupon the sheriff is commanded, that he cause to come," or, "that he omit not, &c. but that he cause to come, &c. to answer, &c." The entry of the *distringas* is thus : "whereupon it is agreed, (*concordat' est,*) that the aforesaid mayor and commonalty and citizens of ———— be distrained by all their lands, &c. so that, &c. to answer to our Lord the King in the premises, and the sheriff is commanded, that he distrain them in form aforesaid, so that, &c." at such a day, &c. (and see 2 Kyd on Corp. 404.) In *Rex* v. *The Mayor and Alderman of Hertford*, (1 Salk. 374,) it is said the process is *subpœna* and *distringas.* This case was up several times. It is reported in Carthew, 503, as *The King* v. *The Town of Hertford*, where it is stated that the first process out of the crown office was a *venire facias* in the nature of a summons, (though Salkeld says it should be a *subpœna*.) This *venire* was followed by a *distringas*, and an *alias* and *pluries distringas ;* which was conceded on all sides to be the right course, for though a motion was made to set the writs of *distringas* aside, this did not relate to the nature of the process. These writs of *distringas* and the motion to set them aside are also mentioned in Holt's Rep. 320, S. C. entitled as in Salkeld. Com. Dig. *Quo Warranto*, (C, 2,) says the process is *venire* and *distringas*, and cites Co. Entr., 1 Sid. and 1 Salk, *supra ;* and so says 2 Morg. Atty's Vad. Mec. 106, 107, on the same authorities as Comyn. But Morgan says, (id. 107,) that the first process against a corporation shall be a summons and afterwards a

*distringas in infinitum.* He says this on the authority of Carthew, *supra*, where the first process is stated to be a *venire* in nature of a *summons.* Thus the *venire* and *distress infinite* appears to be the predominant process in all cases; though in the report of *The King* v. *The Mayor, &c. of Hertford*, (1 Ld. Ray. 426,) *subpœna* and *distringas* are mentioned as the proper process. In *The Commonwealth* v. *Fowler*, (10 Mass. Rep. 290, 291,) the process was summons.

*How the defendant should be named.*] If an usurpation be by a corporation, the process shall be against them by their corporate name. (2 Morg. Atty's Vad. Mec. 107, citing the case of the *quo warranto* against the city of London, 16, Treby's Argument.) If it be for usurping to be a corporation, it shall be against the natural persons who usurp, or by a name which comprehends them. (Id. citing id. 69, and Pollexfen's Argument. And see 2 Rolle. Rep. 115.)

*Teste and return of process.*] In *The King* v. *The Town of Hertford*, (Carth. 503,) the *venire* was returnable in Easter term, 11 Will. 3, upon which a *distringas* issued, returnable *crast.* Trinity; and upon that return a second *distringas* was made returnable in fifteen days, in the same Trinity term; and upon this being returned, a third *distringas* was made, tested in that term, and returnable in Mich. term, Anno 11 Will. 3; and it was moved that the two last might be set aside for irregularity; for that the process in these cases should be made returnable *de termino in terminum*, and not quicker; but that in Trinity term there issued two writs of *distringas*, which should not be; and above forty precedents to this effect, in the crown office, were insisted on. But Holt, Ch. J. answered, that crown office work was, like church work, very slow in its progress, it being usual for clerks to make all such process out together, and of the same teste and return from term to term; but no law required that it should be so; and the motion was denied. (2 Salk. 699, S. C. and S. P. 1 Ld. Raym. 426, S. C. and S. P.)

*Of the issues upon the distringas.*] It was moved in the last case that the Court would make a special rule to entreat the issues upon the several writs of *distringas*, but no such rule was made; but the issues were left to be estreated in due time, according to the course of the Court. And in the report of the same case in Holt, 320, this estreating in due time is said to be to send them up into the Exchequer the last days of the two issuable terms · though the Court agreed, that in an extraordinary case they might make a rule for this purpose.

*Of the seizure nomine districtionis for non-appearance.*] As the process in the proceeding by *quo warranto* was dilatory, while this was conducted before the old Justices in Eyre, if the party did not appear at a certain stage, the franchise or subject of the writ might be seized, on process to the Sheriff, as a distress, and the defendant was put to come in and replevy it, as he would any other distress. When the Justices in Eyre ceased, and the jurisdiction of this writ passed to the King's Bench, the same practice prevailed there, and some of the ancient cases look as if the franchise, &c. should be forfeited forever, unless it was replevied at a short day; though by a modern case, which underwent much discussion, and was finally de-

termined by the Lords, on writ of error, it was held that this had never been the law. But it was agreed by the same case, that the subject of the suit might be seized. The argument for the conclusive effect of the seizure, was founded principally on the Year Book, 15 Ed. 4, which is there reported at length ; but the summary given by Jenkins, in his Centuries, 141, and vid. 2 Kyd on Corp. 502, S. C. is thus : "A *quo warranto* is brought in the King's Bench ; the defendant being summoned makes default ; and another default at the return of the *venire facias ;* judgment shall be that the franchise shall be seized *into the King's hands ;* and not that it shall be forfeited ; for it does not yet appear whether there be cause of forfeiture. No man shall finally lose his land, or his franchise, on any default, if he has never appeared." And with this summary the parliament agreed. In that case a judgment was given, *that the market aforesaid be taken and seized into the King's hands, quousque,* &c. (2 Kyd on Corp. 497.) And the Sheriff was commanded to seize the market, according to the form of the judgment aforesaid, &c. and to show, at the next term, how he executed the writ ; when he returned that he had seized the market into the King's hands, *according to the form of the writ.* (Id. 498.) This same practice was introduced upon the information in nature of a *quo warranto ;* and a similar judgment was given and executed, upon such an information, against the city of Chester, in Hil. Term, 35 and 36 Charles the 2d, the form of which see in 2 T. R. 518. (2 Kyd on Corp. 494, S. C.) The judgment there was of seizure, *quousque,* &c. *i. e. until the said Court shall further order.* The great and labored cause of *The King* v. *Emery,* (2 T. R. 515, 569,) turned mainly upon the effect of this judgment. The King's Bench held it final ; but afterwards, in parliament, the judgment was reversed, a note of which reversal is in 4 T. R. 122, but no part of the case there given. The report of the case in the House of Lords, on error, occupied two vols. quarto ; but a sufficient abstract, as to this point, is in 2 Kyd on Corp. 496 to 511. At page 510, the Chief Baron Eyre, who delivered the opinion of the House of Lords, said he conceived the effect of the judgment and seizure by the Sheriff, laid the King's hands on the franchise *of being* a corporation, and upon other franchises in the information, so that the corporation could not use its liberties ; the action of its vital powers was suspended ; and in this situation he had no doubt that a *custos* might be appointed ; that the corporation in that case might have been restored, on paying a fine to the King, and were restored by pardon, &c. (See an examination of this question, at large, with all the cases, in *The King* v. *Emery,* above cited from 2 T. R. 515, and 2 Kyd on Corp. 496, &c.)

*Whether the defendant can be pursued to outlawry.*] Vid. 2 Kyd on Corp. 438, 439, who concludes that he may.

*Who may defend.*] If the defendant suffer the rule to show cause to be made absolute, or suffer judgment by default, others whose titles may be affected by the judgment may be let in to defend his title, on undertaking to do this at their own expense, and indemnifying him against all costs, &c (Bac. Abr. *Informations,* (D,) 3 T. R. 310.)

*Time to plead.*] The Court may allow to each, as well prosecutor as defendant, such convenient time to plead, reply, rejoin or demur, as they

shall think reasonable. (9 Ann. ch. 20. 2 Lill. Practical Register, 510, (B,) and see the next head.) To this effect is the stat. 1 R. L. 109, s. 6.

*Imparlance.*] There is an entry of this, 15 John. 363. *The People* v. *The Utica Ins. Co.* In *Herring* v. *Brown,* Comb. 11, 12, Williams moved for a second imparlance in a *quo warranto,* and said it was granted in the case of the city of London ; but the Court denied it ; for Astry said by the course of the Court, they were to have but the common imparlance ; and *per Cur.* being *ex gratia,* we may grant or deny it as we see cause. See the next previous head of *time to plead.*

*Of the plea.*] The defendant may plead in abatement ; but he must verify it by affidavit as in other cases of dilatory pleas, (1 R. L. 524, s. 23. 2 Kyd on Corp. 439. *Rex* v. *Jones,* 2 Str. 1161 ;) *and this must be entitled.* (2 Str. 1161.) Whether he may plead a misnomer in his addition ? *Quære.* (Vid. 2 Kyd on Corp. 438, 439, and *Rex* v. *Mayor of Hedon,* 1 Wils. 244, as to the right of outlawry, upon which such a plea seems to depend.) There is such a plea in 6 Went. Plead. 51.

The statute, (4 Ann. ch. 16, s. 4 ; 1 R. L. 519, s. 9,) allowing the defendant to plead more than one plea, with leave of the Court, does not extend to informations in nature of a *quo warranto.* There is no instance in which the Court have given such leave, (*Rex* v. *Newland,* Sayre's Rep. 96,) and see what is said by Sir Fletcher Norton and Lord Mansfield, in *Rex.* v. *Leigh,* (4 Burr. 2146,) and a note to that case which mentions *Rex* v. *Brisco,* as going to the same point with Sayre. But under the statute 32 G. 3, c. 58, s. 2, the defendant may plead several pleas. (*Rex* v. *Autridge,* 8 T. R. 467.) This statute is there recited in a note. There is no such statute in this state. As to the construction of that statute, see *Rex* v. *Stokes,* (2 M. & S. 71.)

The plea in bar should set out the defendant's title at length, and conclude with a general traverse, "without this, that he usurped, &c." (*Rex* v. *Blagden,* Gilb. Rep. 145.) And where the title set forth is bad, but the user confessed, this amounts to a confession of the usurpation. (*Rex* v. *Philips,* 1 Str. 394, 397, cited 1 Burr. 302, 305.) The defendant may either disclaim as to all the franchises mentioned in the information, or plead as to all ; or plead as to part and disclaim as to part. (2 Kyd on Corp. 405.) The English entry of a disclaimer as to all is thus :

" The said ———, protesting that the information aforesaid is not sufficient in law, and that he is not under any necessity by the law of the land to answer thereto, for plea nevertheless, saith, that he never used the aforesaid liberties, privileges and franchises, or any of them, nor in the same or any of them, ever usurped upon the said Lord the King, in manner and form as by the said information is supposed, but in the same, and in every of them, disclaims and disavows, whereupon he prays judgment, and that he may be dismissed by the Court." (Co. Ent. 527. 2 Kyd on Corp. 405.)

If he plead as to part and disclaim as to part, the entry of the disclaimer, after the plea, is thus :

" And as to the residue of the liberties, privileges and franchises, in the said information above specified, upon the said Lord the King supposed to be

usurped by the said ———, the said ——— says, that he never used, nor does he now use the residue, &c." (Co. Ent. 529. 2 Kyd on Corp. 405:)

Where the defendant pleads, the entry is thus:

" And the said ———, as to the aforesaid liberty, &c. of ———, [*there he sets out his title to the particular franchise; and so of every other claimed by a distinct title, and concludes his plea, as to each, in this manner:*] " and by this warrant the said ——— has used during all the time aforesaid, in the said information mentioned, and still uses the liberties, privileges and franchises of ———, as he well might and still may ; without this, that the said ——— has usurped, or now does usurp the said liberties, &c. on the said Lord the King, in manner and form as by the information aforesaid, for the said Lord the King, is above supposed : all which the said ——— is ready to verify, as the Court, &c. whereupon he prays judgment, and that all and singular the liberties, &c. above by him as aforesaid claimed, may be allowed and adjudged to him, and that he may thereupon be dismissed from this Court." (Co. Ent. quo. war. per tot. 2 Kyd on Corp. 406.)

A variety of English forms for these pleas are in 6 Wentw. Pleadings, 28 to 242, among which are a plea in abatement for a wrong addition, p. 51 ; of disclaimer, 83 ; that the defendant was elected by a casting vote according to custom, 29, 36 ; a custom on vacancy to elect a commonalty steward, and that the defendant was duly elected, 82 ; plea setting out a charter and the defendant's regular election, 150 ; the like, setting out a by-law, 157 ; with other pleas reciting customs, usages, by-laws, &c. from 28 to 242. For form of plea in New Jersey, see *The State* v. *Foster,* (2 Halst. 101.) The substance of a plea in Connecticut, see *The State* v. *Tudor,* (5 Day's Cas. Err. 330.) For the form of a plea in this state, see *The People* v. *The Utica Ins. Co.* (15 John. Rep. 363 to 365,) setting forth the title to a franchise under an act. The plea was adjudged insufficient in substance. The form was not questioned.

The plea in *The People* v. *Kip et al.* was thus :

" And now in this same term, the said L. K., D. R., &c. come by Charles G. Haines, their attorney ; and having heard the said information read, they say, that under color of the premises contained in the said information, they are greatly troubled ; and this, by no means justly ; because protesting that the said information, and the matter therein contained, are not sufficient in law, and that they are not obliged by the law of the land to answer thereto, for plea they say, That they do not think that the said people ought to impeach or trouble them by reason of the premises in the said information mentioned and specified : because, they say, that true it is, that in and by a certain act of the Legislature of the state of New York, passed on the twenty-third day of March, in the year of our Lord one thousand eight hundred and twenty-one, all such persons as then were, or thereafter should become, stockholders of a certain company, associated under the style of " The North River Bank of the City of New York," were ordained, constituted, and declared, to be from time to time, and until the first day of July, in the year of our Lord one thousand eight hundred and forty-two, a body corporate and politic, in fact and in name, by the name of " The President, Directors and Company of the North River Bank of the City

ALBANY,
Feb. 1825.

The People
v.
Richardson.

of New York ;" and in and by the said act it was amongst other things enacted, that the stock, property, affairs, and concerns of the said corporation, should be managed and conducted by thirteen directors, being stockholders and citizens of the said state, which directors should hold their offices from the first day of July in every year, and should be elected on the first Monday of June in every year, at such time of the day and in such place, within the city of New York, as a majority of the said directors for the time being should appoint ; and that public notice should be given by the said directors, not less than fourteen days previous to the time of holding the said election, by an advertisement to be inserted in at least two of the public newspapers printed in the city of New York ; and that the said election should be made by such of the stockholders of the said corporation, as should attend for that purpose, either in person or by proxy ; and that all elections for the directors should be by ballot, and that the thirteen persons who should have the greatest number of votes, should be directors ; and that L. K., D. R., T. B., &c. should be their present directors, and should hold their offices respectively until the first Monday of July, in the year of our Lord one thousand eight hundred and twenty-two. And further, that the directors for the time being or a majority of them, should have power to make and prescribe such by-laws, rules and regulations, as to them should appear needful and proper, touching the government of the said corporation, the management and disposition of the stock, business, property, estate and effects of the said corporation ; the time, manner and terms, at and upon which discounts and deposits shall be made and received in and by the same ; the duties and conduct of the officers, clerks and servants employed ; the election of directors, and all such other matters as might appertain to the concerns of the institution ; and should also have power to appoint so many officers, clerks and servants, for carrying on the said business, and with such salaries and allowances, as to them should seem meet ; provided, that such by-laws, rules and regulations, were not repugnant to the constitution and laws of the United States and of this state ; and provided also, that the said directors should keep open the said bank for discount as well as deposit, every day, (except Sunday,) during the usual business hours. And these defendants further say, that The President, Directors and Company of the North River Bank of the City of New York, now are, and for one year last past, and more, have been a body politic and corporate, in fact and in name, by the name of The President, Directors and Company of the North River Bank of the City of New York ; that is to say, at the city of New York and in the county of New York aforesaid. And these defendants further say, that heretofore, to wit, on the twenty-sixth day of March, in the year of our Lord one thousand eight hundred and twenty-two, the directors of the said corporation, did make a certain by-law, in the words following, to wit :

" ' Be it ordained by the President, Directors and Company of the North River Bank of the City of New York, and it is hereby ordained by the authority of the same, that an election shall be held for thirteen directors of this corporation, being stockholders thereof, and citizens of this state, on the first Monday in June next, and on the first Monday in June in every year there-

after, between the hours of eleven o'clock in the forenoon, and two o'clock in the afternoon, at the banking-house of this corporation, in the city of New York ; and that public notice of the time and place of every such election shall be given not less than fourteen days previous to the time of holding the same, by an advertisement to be inserted in at least two of the public news-papers, printed in the city of New York ; and every such election shall be by ballot, and shall be made by such of the stockholders of this corporation, as shall attend for that purpose, either in person or by proxy : and the thirteen persons who shall have the greatest number of votes, shall be directors ; and three persons, being stockholders of this corporation, and citizens of this state, to be previously appointed by the directors, for the time being, shall be in-spectors of every such election, and shall preside at, and hold the same, and shall certify to the directors at the next meeting, the names of the persons elected at such election.

" ' And be it further ordained, that if it shall at any time happen that an election of directors shall not be made on the first Monday in June, in any year, that then an election shall be held as soon as conveniently may be thereafter, on such day as the president shall appoint, which election shall be held at the said banking-house, and between the same hours of the day as are above mentioned ; and three inspectors of such election, being stock-holders and citizens as aforesaid, shall be appointed by the president, who shall perform the duties assigned to the inspectors above mentioned. And fourteen days notice of such election shall be given in the manner above directed, in relation to the elections to be held on the first Monday in June. And in case the office of president shall be vacant ; then the day of election, and the inspectors thereof, shall be appointed in like manner by the cashier for the time being.' "

" And these defendants further say, that afterwards, to wit, on the thirty-first day of May, in the year last aforesaid, the said directors did appoint D. B., W. R. and D. D. S. to be inspectors of the then next election for di-rectors of the said corporation.    And these defendants further say, that each of the said inspectors, D. B., W. R. &c. then was ; and ever since hath been, and yet is, a stockholder of the said bank, and a citizen of the said state of New York, to wit, at the city and county of New York.    And these defendants further say, that the said directors did cause public notice to be given of the said election, and of the time and place of holding the same fourteen days previous to the first Monday of June, in the year last aforesaid, being the time of holding the said election, by an advertisement inserted in two of the public newspapers printed in the city of New York, to wit, in a public newspaper printed in the said city, entitled the New York Evening Post, and in a certain other public newspaper in the said city, called the National Advocate.

" And the said defendants further say, that an election for thirteen direc-tors of the said corporation was held, before the said inspectors, on the first Monday of June, in the year last aforesaid, between the hours of eleven o'clock in the forenoon, and two o'clock in the afternoon of that day, at the banking-house of the said corporation, in the city of New York, and that an election of thirteen directors was then and there made, pursuant

ALBANY
Feb. 1825.

The People
v.
Richardson

to the said act, by such of the stockholders of the said corporation, as did then and there attend for that purpose, in person or by proxy; and that the said election was by ballot; and that at such election the said L. K., D. R., J. C. M., &c. had the greatest number of votes; and that at the next meeting of the directors, to wit, on the third day of June, in the year last aforesaid, at the city of New York aforesaid, the said David Board, William Roe, and Daniel D. Smith, did deliver to the said directors a certificate in the words following, to wit:—"We the subscribers, inspectors of election for thirteen directors, to conduct the stock, property, and affairs of The President, Directors and Company of the North River Bank of the City of New York, for the ensuing year, do certify, that the said election was this day held under our inspection; and that on canvassing the votes taken by us, it appears that L. K., D. R., J. C. M., &c. were the thirteen persons who had the greatest number of votes, and are elected;" which foregoing certificate was dated the third day of June, in the year of our Lord one thousand eight hundred and twenty-two. And the said defendants further say, that afterwards, to wit, on the first Monday of July, in the year last aforesaid, they did, in pursuance of the said act, take upon themselves respectively, the office of directors of the said corporation, to wit, at the city and county of New York aforesaid; and by virtue of the premises, they then and there became, and on the first Monday of July, in the year aforesaid, at the city and county aforesaid, and from thence continually until the time of exhibiting the said information, were, and still are, directors of the said corporation, to wit, at the said city and county of New York; and by that warrant, the said defendants, for and during all the time in the said information in that behalf specified, at the said city and county, have respectively used and exercised, and still do use and exercise, the office of directors of the said corporation; and for and during all that time, have there claimed to be such directors, and to have, use, and enjoy all the liberties, privileges and franchises, to the said office belonging, as it was and is lawful for them to do:—Without this, that the said defendants, the said office, liberties, privileges, and franchises, in the said information above mentioned, or any of them, have usurped, and did usurp, upon the people of the state of New York, in manner and form as by the said information is above alleged against them; all and singular which matters and things the said defendants are ready to verify and prove, as the Court shall award: Wherefore they pray judgment, and that the said office, liberties, privileges, and franchises, by them claimed in manner aforesaid, may be allowed and adjudged to them; and that they may be dismissed and discharged by the Court hereof, and from the premises above charged against them.

C. G. H. *Attorney for defendants.*"

This suit was settled immediately after plea. (Vid. 1 U. S. Law Journal, 284.)

It is not sufficient for the defendant, in a *quo warranto*, to plead that such a subject hath a lawful interest to hold a leet, without making any title to himself; for the writ is *quo warranto* he claims, &c. (2 Leon. case, 31

Nor is it enough to plead *non usurpavit libertates prædictas,* but the plea should also say *nec earum aliquam.* (3 Leon. case, 135. The defendant must either justify or disclaim ; and not guilty and *non usurpavit* are not good pleas ; for they do not answer to the nature of the charge which is to show by what warrant or authority. (Bull. N. P. 211. Ca. K. B. 225.) The defendant should show a full title to himself. (Com. Dig. *Quo Warranto,* (C,) 4, cites 9 Co. 24, *b.* 2 Leon. 28. Hardr. 456.) As if the King grant *bona felonum,* or other franchises, which lie in charter, to an Abbot, &c. whose possessions come back to the crown, and the King re-grants *bona felonum,* &c. *adeo plene prout abbas habuit ;* in a *quo warranto* against the grantee, he should plead the first grant to the Abbot, the re-union in the crown, and afterwards the re-grant, &c. (Id. cites R. 9 Co. 26, *a.,* per Popham. 2 J. Cont. Mo. 297.) In pleading the King's charter, he ought not to say he granted and confirmed, for this is double. (Id. cites Sid. 86.) In pleading the grant of an office, he should show it an ancient office, (id. cites 1 Sid. 86, and qualifies it with *semble ;)* and allege the thing done to be appurtenant to his office, (id. cites 1 Sid. 86 ;) and in pleading a grant to an Abbot he should show for what estate. (Id. cites R. Mo. 297.) In pleading a privilege to himself as copy-holder, he should plead it in him who has the freehold at least. (Id. cites R. Yel. 191.) But it is sufficient that the plea be as general as the information ; as if a *quo warranto* be for using a market, toll, &c. it is sufficient to make title to the market, toll, &c. without saying how much the toll was. (Id. cites Palm. 81.) If he claim a franchise as appendant to a manor which came to the King by the attainder of B. and afterwards was granted to him, it is sufficient to say that B. *fuit debito modo attinctus.* (Id. cites 3 Leon. 72, *semb.)* So if he claims franchises by prescription, and others by charter, he may conclude *eo warranto utitur* generally ; for it shall be taken distributively. (Id. cites R. Mo. 398.) That a man may prescribe *tenere placito,* but not to have cognizance of pleas, &c. and as to the distinction between what may be prescribed for, and what must be pleaded by way of grant, see 1 Salk. 183–4 ; Bull. N. P. 212 ; 5 Co. 109 ; 9 Co. 24. Several general rules relative to pleading are laid down in Sir Edmund Bacon's case, (Latch. 45,) which was *quo warranto ;* but as they are equally applicable to other cases, they are found in the books upon pleadings in general. And see also the various cases collected in Keilw. from 137 to 158. Cro. Car. 311, pl. 2. *Rex* v. *Knight,* 4 T. R. 419, 425. *Rex* v. *Birch,* 4 T. R. 608. *Rex* v. *Clarke,* 2 East, 75. *Rex* v. *Mein,* 4 T. R. 480, for cases of and pleadings in *quo warranto,* relative to various corporate titles.

*Replication and demurrer.*] After plea, the Attorney General demurs or replies, and the subsequent proceedings are in the same manner as in civil actions. (2 Kyd on Corp. 406.) Where several things are necessary to constitute a complete title in the defendant, the crown may take issue on each, and if any one of the issues, on a fact material to the title, be found against the defendant, there shall be judgment of ouster, and the defendant shall pay the costs on all the issues. (Bac. Abr. *Informations,* (D) cites *Rex* v. *Hearle,* 1 Str. 627. 2 Ld. Raym 1447. *Rex* v. *Downes,* 1 T. R. 453.) The replication should not take issue on the general traverse, " without this,

that he usurped, &c." but should be to the special matter, that the defendant may know how to apply his defence. (Id. cites *Rex* v. *Blagden*, Gilb. Rep. 145.) The Court will not interfere summarily to set aside a replication because it goes to a point not insisted on in the information. (*Rex* v. *Brown*, 4 T. R. 276.)

For English forms of replications denying customs, usages, &c. see 6 Wentw. Plead. 28 to 242, at different intervals. For demurrers, id. 113, 106, 62, 52, 152, &c. Also, *The People* v. *The Utica Ins. Co.* (15 John. Rep. 265.) Whether the prosecutor can demur to part of the plea and reply to the rest? *quære?* (*Rex* v. *Ginever*, 6 T. R. 733, note.) *Semb.* he may demur to the whole and plead to particular parts. (Id.) Form of replication in New Jersey, (*The State* v. *Foster*, 2 Halst. 101.)

*Rejoinder and joinder in demurrer.*] For forms of rejoinder see 6 Wentworth's Plead. 58, &c.; of joinder in demurrer, (*The People* v. *The Utica Ins. Co.* 15 John. Rep. 365. 6 Wentw. Plead. 114, 62, 52, 152, &c.) Rejoinder in New Jersey, (*The State* v. *Foster*, 2 Halst. 103.)

*Surrejoinder.*] For the form of this, see 6 Wentw. Plead. 58.

*Rules to plead, reply, &c.*] These are of course, and the same.as in ordinary proceedings. (*The People* v *Clark, ante*, 95.) In England they have rules to plead peculiar to this and the like informations, grounded on the practice of the crown office. But they are rules of course. The practice there is fully exhibited in *Rex* v. *Ginever*, (6 T. R. 594,) and the notes there.

*Suggestion that Sheriff is interested and prayer that distringas may be directed to a coroner,*] 6 Wentw. Plead. 106–7.

*Of amending the pleadings, and other proceedings.*] These are the same as in ordinary actions; rules of course may be entered for this purpose; in the same manner. (*The People* v. *Clark, ante*, 95.) And amendments on special motion appear to have always stood on the same footing as in other actions. (Com. Dig. *Quo Warranto*, (C, 4.) Sid. 54. *Rex* v. *Blatchford*, 4 Burr. 2147.) Indeed, there is greater reason for allowing the defendant to amend his plea, or withdraw and substitute another, as he cannot plead double; and this matter was so considered in *Rex* v. *Blatchford*, (4 Burr. 2147,) where the defendant was allowed to withdraw his plea and plead *de novo* just before the trial, upon payment of costs, pleading within a week, and taking short notice of trial, with liberty for the prosecutor to reply *de novo*, and this was done without affidavit of any particular circumstances, or any particular reasons given for the amendment. (See the opinion of Lord Mansfield on that motion, id. 2148.) The Attorney General was allowed to amend the information by adding a new count, on motion. (*The People* v. *Clark, ante*, 95.) The statute of *amendments and jeofails*, are extended to all the proceedings on informations in nature of a *quo warranto*. (1 R. L. 117, 121, s. 10.)

*Trial and evidence.*] The practice and rules relative to these are generally the same as in ordinary cases. What is peculiar as to evidence arises mostly out of the law touching the old British corporations, and has little application here. Buller, in his Treatise of Nisi Prius, 211, 12, 13, has collected a few cases of this kind, only three of which, from 4 Co. 78, Comb

316, and 1 Salk. 168, properly come under the head of evidence  The others more properly belong to a treatise on corporations.  Other cases of evidence, peculiar. to this proceeding, are *Rex* v. *Hebden*, 2 Str. 1109, and see Andr 389.  *Rex* v. *Grimes*, 5 Burr. 2598, 2601.  *Rex* v. *Spearing*, 1 T. R. 4, n Cowp. 503, 507.  *Rex* v. *Mein*, 3 T. R. 596.  4 T. R. 480  *Rex* v. *Robins*, 2 Str. 1069.  Cowp. 502.  Doug. 374.

There is now no doubt that a new trial may be granted, be the verdict for the people or defendant.  (2 Kyd on Corp. 445.)  And vid. *Rex* v. *Bennet*, 1 Str. 101.  *Rex* v. *Corporation of Brecknock*, 8 Mod. 201.  *Rex* v *Francis*, 2 T. R. 484.  3 Wood. Lect. 355.)  But a new trial will not be granted for misdirection, where it appears that the term of office, in the defendant, respecting which the information was filed, has expired, and a new annual election of officers made.  (*The State* v. *Tudor*, 5 Day's Cas. in Error, 329.)  Where the issue is on the legality of the election, evidence may be given of conversations and transactions previous to the election, if they were connected with, and might have an influence on it, though no previous notice thereof has been given.  (*The Commonwealth* v. *Welper*, 3 Sergt. & Rawle's Rep. 29.)  The place where the process should be returned and trial held ; see *Commonwealth* v. *Smead*, (11 Mass. Rep. 74.)  Motion for a new trial for variance between pleading and proof, &c.  *Rex* v. *Rowland*, (3 B. & A. 130.)  The Court will order a change of venue on the ground of local prejudice.  (*Rex* v. *Emery*, 1 T. R. 363, &c.  3 Wood. Lect. 341.)  And the Court may, in its discretion, order a trial at bar.  (*The King* v. *Emery*, 1 T. R. 363.)

*Bill of exceptions.*].  For this a form. is given in 6 Wentw. Plead. 130; 133.

*Postea.*]  For a form of this, see 6 Wentw. Plead. 240.

*Repleader.*]  Where the defendant pleads a bad title, which results in an immaterial issue, and a verdict for him, the rule, as to awarding a repleader, is the same as in ordinary actions.  (1 Str. 394, 397, cited 1 Burr. 302, 305.)

*The judgment.*]  This seems to be the same, and subject to the same varieties, at common law, as on the writ of *quo warranto*.  (2 Kyd on Corp. 406.)  If given for the defendant, the entry is thus :

" It is considered that the liberties, &c. be allowed to the said ———— ;" or thus : " the said.———— may use, have and enjoy all the said, &c. ; and the said.————, as to the said premises, may be dismissed from this Court, SAVING always the right of the said Lord, the King, if hereafter, &c."  (Id. cites Co. Ent. 535, *b.*, 537, *a.*  Rast, 540, *b.*)

" This *salvo jure* for the King, says Lord Coke, serveth for any other title than that which was adjudged ; and therefore William de Penrugge, the King's Attorney, for prosecuting a *quo warranto* against the Abbot of Fischamp, for franchises within the manor of Steyning, *sine præcepto*, was committed to jail."  (2 Inst. 282.)

If the defendant's plea be confessed, the judgment is to allow the franchises.  (Com. Dig. *Quo Warranto*, (C, 5,) cites Co. Ent. 535, *b.*, 537, *a.*, 549, 564.)  But a confession by the Attorney Genera. does not bind the King, where the matter is not private, but concerns the public  (Id. cites 1 Rol

ALBANY,
Feb. 1825.

The People
v.
Richardson.

112.) So a confession by the Attorney General, if it be not after plea upon record, does not bind the King. (Id. cites Sav. 19, *semb*.) So a confession by the Attorney General does not conclude the King or the Court, in a point of law, but only as to the fact, (id. cites 2 Bulstr. 296 ;) as to which a judgment is conclusive against the King, (Hardr. 129,) and generally on a judgment against the King in this proceeding, he is forever bound. (1 Rol. Rep. 112.)

On disclaimer, by the defendant, the Attorney General prays, "that whereas the said ————, by his plea, has disavowed and disclaimed all and singular the liberties, &c. above specified, judgment may be given for the King, and that the said ————, with the said liberties and franchises, or any of them, may no way intermeddle, but may hereafter be altogether excluded from the same," and judgment is accordingly given in that form. (2 Kyd on on Corp. 407. Co. Ent. 27, *b*.)

With respect to the form of the judgment for the King, at common law, there are several nice distinctions, and considerable dispute in the books ; as whether it should be of seizure, ouster, or mixed of both ; and whether it should be of *capias pro fine*, or *quod sit in misericordia*, &c. but, to all practical purposes, these distinctions are, I conceive, abolished by the statute of this state, (1 R. L. 108, s. 5,) which declares the form of the judgment for the people. As the curious reader may, however, desire to look into the common law cases on this head, he will find them fully collected and briefly stated in 2 Kyd on Corp. 407 to 409. There cannot be judgment against a corporation, but in their politic capacity. (4 Mod. 58.)

Judgment is for costs against the relator or defendant, according to the event of the suit. (1 R. L. 108–9, s. 5.)

Where several things are necessary to constitute a complete title in the defendant, the Attorney General may take issue on each ; and if any one of the issues on a fact material to the title be found against the defendant, judgment of ouster shall be given against him. As where being elected and sworn are both necessary to the title, and the jury find against the being sworn, and for the election. (*Rex* v. *Hearle*, 1 Str. 582, 625, 627. 2 Lord Raym. 1447.) This is affirmed on error, and is recognized in *Rex* v. *Reeks*, 2 Lord Raym. 1447 ; and see also *Rex* v. *Latham*, 3 Burr. 1485, 1487, per Lord Mansfield, at the last page. It is said in the 2 Lill. Pract. Reg. 509, C, that if several privileges are granted in a charter, and there is a forfeiture of the charter, for an abuser of one of the privileges, and a *quo warranto* is brought, and judgment upon it, this is a forfeiture of the whole charter.

Upon information in nature of a *quo warranto* against one for claiming the office of alderman, if he disclaim, and judgment of ouster be given against him, he is concluded from showing to a second information for exercising the same office, that he was duly elected before such first information and judgment of ouster, and that he was afterwards sworn in by virtue of a peremptory mandamus. But, *semble*, if the election to the office were good, and only the first swearing in irregular, the first judgment should not have been an absolute judgment of ouster ; but either a judgment of *capiatur pro fine* only, for the temporary usurpation, or a judgment

*quousque,* &c.   (*The King* v. *Clarke,* 2 East, 75, and see 2 Str. 952.)   If judgment be against the principal franchise all incidental and subordinate franchises are also gone.   (Palm. 82.)   The judgment in a *quo warranto* is final ; for it is in nature of a writ of right.   (1 Sid. 86.)   A judgment *quod capiantur* amounts to the same thing as a judgment *quod capiuntur* in the indicative mood, like the judgment in debt *quod recuperet,* which is the same with *quod recuperat,* (said *arguendo,* in *Sir James Smith's case,* Carth. 218, as appears by the following entries and cases : Rast. Ent. 54.   Co. Ent. 538, 559.   9 Rep. 98.   15 Ed. 4, 7.   Ryley, 277.   Maynard's ed. 2, 16, 24.) What judgment may be given in Massachusetts, see *Commonwealth* v. *The U. F. M. I. Co. of Newburyport,* (5 Mass. Rep. 230,) and *The same* v. *Fow· ler,* (11 id. 339.)

For forms of judgment see 6 Wentw. Plead. 13, 89, 161, and 242.   The form of the judgment in Massachusetts is given at length in *The Commonwealth* v. *Fowler,* (11 Mass. Rep. 339,) as drawn up under the direction of the Court.

*Judgment rolls complete.*   6 Wentw. Plead. 234 to 242, contains the roll from the *placita* to the judgment.   So id. 153 to 161.

*Costs.*]   In England costs are not given against the defendant, except where the information relates to a corporate office ; but this is upon the particular wording of the statute, 9 Ann. ch. 20, which is clearly not so broad as the New York statute.   (*Rex* v. *Wallis and Barrs,* 5 T. R. 375., The Court will not stay proceedings until the prosecutor give security for costs on the ground that the relator is in insolvent circumstances, where it appears that he is a corporator, and no fraud is suggested.   (*Rex* v. *Wynne,* 2 M. & S. 346.)   The statute 9 Ann. c. 20, had not (in 1817,) been re-enacted in Pennsylvania, and it was therefore held in *The Commonwealth* v. *Woelper et al.* (3 Sergt. & Rawle's Rep. 52,) that neither party could recover costs, the information being at common law.

*Execution.*]   If judgment be for the people, the regular course is, to issue a writ of seizure to the sheriff, which, after reciting the proceedings, commands him to seize the liberties into the people's hands, (vid. 2 Kyd on Corp. 410, cites Co. Ent. 539, *b.* ;) and thereon the sheriff shall return a seizure. Co. Ent. 540, *b.*)   But this writ, in point of fact, has not always issued. (2 Kyd on Corp. 410.)   The usual process by *fi. fa.* or *ca. sa.* goes for the costs, either against the relator or defendant, according to the event.   (1 R. L. 108, 109, s. 6.)

*Writ of error.*]   For the form of this writ, see 6 Wentw. Plead. 153.   This is a writ from the K. B. to Parliament.

*Return thereto.*]   Same book, 153.

By an act passed April 21st, 1825, (since writing the above,) one of the Justices of the Supreme Court may, in vacation, grant leave to file an information in nature of a *quo warranto* against any corporation, on notice or otherwise, in his discretion ; on filing which, the Attorney General may issue process.   On this process being returned duly served, the Clerk may enter the defendant's appearance ; whereupon, the proceedings against them shall be the same as in the case of private persons.   When an issue of fact is joined, the cause shall be entitled to a preference at the Circuit

and, on its coming before the Supreme Court, on demurrer, special verdict, bill of exceptions, demurrer to evidence, or case, it shall be preferred, so that it may be argued and determined at the term for which it shall be noticed.

The Supreme Court, on the application of any person or persons, natural or corporate, who may be aggrieved by, or complain of any election, or any proceedings, act or matter, in or touching the same, on notice, shall proceed in a summary way to hear the affidavits, proofs and allegations of the parties, or otherwise inquire into the matter or cause of complaint; and thereupon establish the election so complained of, or order a new election, or make such order and give such relief, in the premises, as right and justice may appear to require; and may order an issue or issues to try the rights of the parties to the office, offices or franchise in question, or may give leave to the Attorney General to exhibit an information or informations in nature of a *quo warranto*, pursuant to the act for rendering the proceedings upon writs of mandamus, and informations in the nature of a *quo warranto*, more speedy and effectual, passed 6th February, 1788.

In case any such issue shall be ordered, or any such information be permitted to be filed, it shall be lawful for the Court to make such further order, for prescribing and limiting the times for the respective parties to plead and proceed therein, and for giving preference to any issue, to be made up or joined therein, and for expediting the ulterior proceedings, if any, so as to cause the same to be proceeded upon, and the final determination thereon to be had, with the best and most convenient speed that may be ; and the Court shall cause the same to be expedited by all such ways and means, as a due regard to the ends of justice will admit, and the case may require.

On information by the Attorney General against a corporation, or any person or persons claiming to be a corporation, or to be officers of a corporation, if judgment shall finally pass against the defendants, full Supreme Court costs shall be awarded, to be collected by execution or attachment.

As this act relates merely to the mode of proceeding against corporations or corporate offices, the ancient practice, it will be perceived, must still be resorted to in all other cases.