## COMMONWEALTH *versus* SAMUEL FOWLER, ESQ.

Where the solicitor-general, in an information against one for usurping a public office, recited an order of the House of Representatives, requesting him to file such information, and stated that he filed the same by virtue of the authority of, and in compliance with, the said order, the Court refused to quash the information, as not having been duly filed, considering that it was, notwithstanding such recital and statement, filed by the solicitor-general *ex officio.*

Where the legislature had created a new county, and in the act had provided that it should not take effect until a future day mentioned, it was holden that an appointment, by the executive of the commonwealth, to an office for such county, before such day, was void.

AT the last April term in this county, the *Solicitor-General* filed the following information, *viz.* : —

" Be it remembered, that *Daniel Davis,* solicitor-general of said commonwealth, comes into Court, and brings with him into Court a certain order of the House of Representatives of said commonwealth, which is in these words following, that is to say : —

" In the House of Representatives, Feb. 4, 1813.

" Ordered that the attorney or solicitor-general of the commonwealth be requested to file informations in the nature of [ * **291** ] a * *quo warranto,* to know by what authority the Hon. *Samuel Fowler* exercises the office of judge of probate of wills, &c., in the county of *Hampden,* and also chief justice of the Court of Sessions in said county ; and by what authority " [divers other persons exercise sundry offices in said county.]

" Whereupon the said solicitor-general, by virtue of the power and authority of, and in compliance with, the said order of the House of Representatives, and of the request therein contained, gives

the said court to understand and be informed, that *Samuel Fowler*, of *Westfield*, in said county of *Hampden*, esquire, for the space of six months now last past, hath used and exercised, and still doth use and exercise, the office of judge of probate, &c., in the said county of *Hampden*, without any warrant or lawful authority therefor; which said office, and the powers, authorities, and emoluments, to that office appertaining, the said *Samuel Fowler*, during all the time aforesaid, hath usurped, and still doth usurp, upon the government of said commonwealth, to the great damage and prejudice of the lawful authority thereof. Whereupon the said *Solicitor-General* prays the advice of the Court here in the premises, and for due process of law against the said *Samuel Fowler* in this behalf to be made, to answer to the said commonwealth *by what warrant* he claims to have, use, exercise, and enjoy, the aforesaid office." ·

Summons having issued upon this information for the appearance of the said *Samuel* at this term,

*Ashmun,* on the part of the respondent, moved the Court to quash the information, on the ground that it had never been duly filed in Court. He did not question the authority of the solicitor-general to file such informations in proper cases, nor the right of the legislature to direct them to be filed by the proper officer of the government. But the present was neither of those cases. The solicitor-general had not thought fit to act *ex officio,* nor had he been directed by the legislature. He had recited the authority under which he acted, and it appeared to be a number of individuals having no constitutional powers for the purpose. Such were the *House of Representatives. They had no powers but [ * 292 ] what were conferred by the Constitution of the commonwealth, or necessary to the due execution of those powers. By neither of these were they empowered to direct or authorize the executive officers in a case of this kind. Nor was it necessary or expedient that they should possess this power, since the regular organs of the government could act officially, and were responsible for the due application of their powers in all proper and suitable cases.

As these informations are in the nature of criminal proceedings, the utmost legal strictness is applicable to them. It ought to appear certainly and clearly to the Court that they had a lawful and constitutional origin, and came regularly before the Court, before the party charged be held to answer to them.

The respondent further insists that, under the Constitution of this commonwealth, no such process lies against an officer holding an office under an appointment from the executive, which is a coördinate and independent branch of the sovereignty of the state. It

seems an absurdity for one portion of the government to call on a citizen to show by what authority he exercises an office to which he has been appointed by another portion of the same government, equally deriving its powers from the Constitution, and accountable for the exercise of them only to the people who conferred them. And the cases of informations of this nature in the books are wholly of corporate offices, or franchises. Not one is recollected of an office derived immediately from the sovereignty, or any branch of it.

SEWALL, J. You are too early with this objection. There is nothing before us intimating the authority from which the respondent claims to hold his office.

*Bliss* (who appeared for the commonwealth, in the place of *Davis*, solicitor-general, who was unable to attend his duty in Court from bodily indisposition,) insisted that the information was filed by the solicitor *ex officio*. It is true, he recites a request of the [ * 293 ] House of Representatives; and this * may have operated as an inducement to him to exercise the legal functions of his office in this instance; but still he does the act of himself, by virtue of the powers inherent in his office. If he had done the same thing at the instance of an individual citizen, and had seen fit to recite his motive in the information, this could not have vitiated the proceeding.

But it was competent to the House of Representatives to direct this process. They are constitutionally the grand inquest of the commonwealth, the natural and appointed guardians of the public morals, and of all public officers. It would have been less fit for the Senate to have joined in the request, and thus have made it a legislative act, since they are to judge in the last resort upon the conduct of the officers of the government; and for the executive to have taken an interest in this prosecution would have subjected it to the imputation of wishing to create a vacancy in an office, to be filled by its own appointment.

*Ashmun*, in reply. The solicitor-general expressly declares that he files this information "by virtue of the power and authority of the order of the House of Representatives, and of the request therein contained." Words cannot be plainer. It is as strong as if he had said he did *not* do it in virtue of his office, or of his own discretion, or from his own sense or conviction of official duty. It must be understood, by every person of common capacity, who reads the information, that the solicitor-general would not have filed it but for the order of the House of Representatives, which he has seen fit to recite at large as his authority.

The Court take notice of the relators, when an information is

filed ; (1) and where a high judicial officer, as in the present case, is the object of the prosecution, they will require either that the legislature authorize the proceeding, or that the regular and responsible organ of the government do it in his own name, by virtue of his office. (2)

JACKSON, J. The solicitor-general, having *ex officio* a right so to do, has filed this information. We cannot presume * that he will exercise this high function of his office [ * 294 ] without sufficient authority. The allegations in the in-formation are such as form a proper subject of inquiry for this Court. The request of the House of Representatives, which the solicitor has thought proper to insert in the information, has no effect to alter the character of the proceeding. I am therefore for supporting the information.

THATCHER, J. I have come to a different conclusion. The solicitor-general, in this information, has exhibited the grounds on which he has thought proper to institute it. He relies on the reso-lution of the House of Representatives, as giving him authority in the case. He says, expressly, that he acts in the case *by virtue of the power and authority of the order of the House, and in compliance with it.* I am bound, therefore, to consider him as so acting. He does not assume to act by the authority inherent in his office. It seems to be conceded that he must, in a case like this, proceed *ex officio*, or by the direction of the legislature ; and as he, in the present case, virtually disclaims the first, and does not pretend the last, I am for quashing the information.

SEWALL, J. Proceedings of this nature are to be instituted by a regular officer of the government. When he files an information, I think we are bound to presume that he files it *ex officio*. In the information before us, he has recited a certain order of the House of Representatives, as his inducement or motive for instituting the pro-cess. It was a suitable and sufficient motive ; but it does not form the legal ground on which the process rests. If it furnished his only authority in the case, I confess I should think it insufficient. But such is not my impression. He is still the officer of the com-monwealth, duly authorized to prosecute informations of this kind. The order of the House has no operation, either to extend or to limit his official powers or duties. It may be rejected as surplusage. The respondent is not bound to notice it in his defence. In short, I must consider the information as exhibited by the solicitor-gen-eral in virtue of the general powers of his office, and therefore

(1) 5 *Mass. Rep.* 230, cites 2 *Burr.* 869.
(2) *Coke's Entries*, tit. *Quo Warranto.*
25 *

duly brought before us. I think the motion for quashing it not supported.

[ * **295** ] * PARSONS, C. J. I have no hesitation upon the question before us. It is not disputed but the attorney and solicitor-general respectively have full authority to file an information of this kind, by virtue of the general powers of their offices, without any interposition of the legislature. In such cases, as in all their other official acts, they are accountable to the government for their conduct. It is true, that, in the prosecutions in the nature of inquest of office, whereby the commonwealth claims to be reseised of lands before granted, they are to wait for the directions of the legislature. (3) An information for the purpose of dissolving a corporation, whether created by charter under the seal of the commonwealth, or by a statute of the legislature, may be prosecuted either under the authority of the legislature, to be exercised in each particular case, or by the attorney or solicitor-general, acting *ex officio* in behalf of the commonwealth. (4) But those officers, in cases of usurpation by individuals of offices holden of the commonwealth, may file informations against the supposed usurpers *ex officio*, or at the relation of any persons. They alone are responsible for the proceeding in such case.

In the information now before us, it is the solicitor-general who acts and appears through the whole of it. He undertakes to state the motive which induced him to act; and I am satisfied that it was a suitable and proper one. He was under no necessity of inserting the order of the House of Representatives in the information. Had he kept it in his pocket, it would have answered every purpose he intended to effect by reciting it in the process. I still, therefore, consider him as acting *ex officio*, and upon his own responsibility. If we have misconceived him, and he has himself a different view of the subject, he may at any time prevent the effects of our misconstruction of his act, by entering a *nolle prosequi* upon the information. (*a*) *Motion overruled.*

The respondent then pleaded in bar, " that heretofore, *viz.*, on the 20th day of May, in the year of our Lord 1812, and before he

(3) *Stat.* 1791, c. 13, § 1.
(4) 5 *Mass. Rep.* 232.
(*a*) [See *Commonwealth* vs. *Smith*, 9 *Mass. Rep.* 531. — *People* vs. *Utica Ins. Co.* 15 *Johns.* 358 — ED.]

ADDITIONAL NOTE.

[It has been held, in *Alabama*, that the Supreme Court has no authority, on the relation of the attorney-general, in behalf of the state, to inquire into the constitutionality of an appointment, by the legislature, of a judicial officer. — *The State* vs *Paul*, 5 *St. & Por.* 40.— F. H.]

exercised, or assumed to exercise, the said office *of [ * **296** ] judge of probate of wills, &c., within and for the said county of *Hampden*, he was duly and legally nominated and appointed to the same office by his excellency, *Elbridge Gerry*, Esq., then and long afterwards governor of the said commonwealth of *Massachusetts*, by and with the advice of council ; and was duly commissioned thereto, as by the commission signed by the said governor, and attested by the secretary of the commonwealth, with the great seal of the commonwealth affixed thereto, which the said *Samuel Fowler* brings here into Court, for the inspection of the Court, — is manifest and appears. And the said *Samuel* avers that, after he was so appointed and commissioned as aforesaid, and before he entered on the discharge of the business of said office, *viz.*, on the 23d day of May in the same year, he took and subscribed the declaration and oaths prescribed by the Constitution of said commonwealth and the laws of the *United States,* to be taken and subscribed by any person appointed or commissioned to any judicial, executive, military, or other office under the government, before his honor, *William Gray*, Esq., then being lieutenant-governor of said commonwealth, and then being duly authorized to administer the same, as by the certificate of the said lieutenant-governor on the same commission is manifest and appears. *Without this,* that he, the said *Samuel,* usurped upon the said commonwealth, as in and by the said information above is supposed. All which the said *Samuel* is ready to verify. Wherefore he prays judgment," &c.

To this plea in bar, after oyer of the said commission and certificate, which corresponded with the description of them in the plea, the solicitor-general, for the commonwealth, demurred generally, and the respondent joined in demurrer.

*Bliss* argued for the commonwealth in support of the demurrer

The plea is bad, inasmuch as, on the 20th of May, 1812, there was no such county as *Hampden* in the commonwealth. The act (5) for creating this new county passed on the 25th of February, 1812 ; and the 12th or last section enacts that * the [ * **297** ] act shall take effect and be in force from and after the 1st day of August then next. It is as if the act had provided that from and after that day there should be a county of *Hampden.* Where a particular time is appointed for a statute to commence its operation, it only begins to have effect from that day. (6) The commission recited on oyer purports an appointment to an existing office : whereas, at that time, there was in truth no such office. The

(5) *Stat.* 1811, c. 137.
(6) *Bac. Abr. Stat. C.* cites Lord *Raym.* 371. — *Rex* vs. *Gall*, *Plowd.* 79

act contains no provision, as some in similar cases have, that the officers may be appointed before its principal operation. By the common law, no judicial office can be granted in reversion ; (7) for which a very sensible reason is given, — that he who, at the present time, may be able and sufficient to supply the office of judicature, when the office falls, may become insufficient. An appointment to a judicial office in reversion seems also plainly inconsistent with the fifth and sixth articles of the declaration of rights prefixed to our Constitution, as well as with the provisions of the Constitution, which define the powers of the governor, all which confine them to the governor *for the time being*. This must intend that the governor, at the time of the vacancy of an office, is to fill such vacancy. There was not, in the present case, the common pretext of necessity for the violation of the Constitution ; for the successor of Mr. *Gerry* was to be in office, and have his council about him, more than two months before the office to be filled would come into existence.

*Ashmun*, for the respondent. There is no authority in this Court to make the inquiry requested by this information. If there is any foundation for this prosecution, it must be that the appointment was void ; and, if void, it must be because there was no such office at the time of the appointment. But the executive was constitutionally authorized and bound to decide that question. It is true the executive has authority to call on this Court for its opinion in certain cases ; but this is very distinct from giving to this Court a right, by process of this kind, to animadvert upon the [ * 298 ] acts of the executive, * assumed to be done by virtue of its constitutional powers, and certainly done within the forms of the Constitution. It was surely no crime in the respondent to accept an appointment thus originated ; there was nothing in the fact to subject him to this criminal proceeding.

He was appointed to this office by the then executive authority, in whom the Constitution had vested the power. The records of the executive department will show by what authority he claims to exercise the duties of the office. It is to be apprehended that the claim of a right, by this Court, to remove an officer receiving his appointment from the supreme executive, may wear the appearance of too great an interference between the judicial and executive departments. Such an interference is less necessary, since any person, improperly exercising the functions of any office, may be removed by the executive, on the address of the two Houses, or by conviction upon impeachment.

(7) *Com. Dig.*, *Officer*, B, 13, 11, *Co.* 4, *a*, *b*.

No possible advantage can result from this interference with the prerogatives of the executive, since the same man may be placed in the same office in a week after his amoval by this Court.

There is no precedent in the *English* courts, nor in this country, of such a proceeding against an officer appointed by the supreme government ; and this is a strong argument that this *extraordinary* process, as it is called in the books, does not lie in the case.

To the objection that the appointment was premature in this case, *Ashmun* produced two certificates from the secretary of the commonwealth of similar appointments in like cases ; which he argued from, as a practical construction of the question made by different governors, to whom the right and duty of the construction properly and constitutionally appertained. And, indeed, another construction would be mischievous, as it would necessarily leave new counties without officers for a considerable time. The executive authority of the commonwealth always exists, and is, in contemplation of law, always the same. It was, then, a question of no * interest to the community, whether the     [ * 299 ] appointments in this case were made by the governor for 1811, or the governor for 1812.

*Bliss*, in reply. If this Court should determine it improper to interfere in this mode, and settle the question of the right of the persons appointed, as the respondent was, to hold and exercise their offices, great inconveniences must follow. To refer it to the present executive, and require a decision at that forum, would be productive of much confusion. To leave it undetermined, will open the door for innumerable civil actions, arising out of the doubt whether the appointments are valid. And thus, indeed, the question will at last come here for its decision.

To say that the respondent received his appointment from the governor, is but begging the question. If the governor made the appointment without constitutional authority, it was as no appointment at all.

If some cases have occurred similar to this, there have been many, where the governor has properly waited until the office existed ; and many statutes creating counties, courts, &c., have expressly provided for appointments to office, before the acts should come into operation as to their principal object.

It is, however, to be hoped that executive precedents are not all of them to be established at law. If they should be, our government would be emphatically a government of *men*, and not of *laws*. One governor divides, and another unites, the militia. One orders detachments from it, and another declares the measure unconstitutional. One waits till there is an office, before an officer is ap-

297

pointed; and another makes appointments before the law has created an office. At one time, the executive causes it to be entered on the public records, that an adherence to party ought to be the rule of selections to office. Another executive holds to the saying, *Detur digniori;* and, in the spirit of an old *English* statute, (12 *R.* 2, c. 2,) declares "that no officer shall be ordained or made for any gift or brokage, favor, or affection, nor [ * 300 ] that * any which pursueth by himself or any other, privily or openly, to be in any manner of office, shall be put in the same office or in any other; but that all such officers shall be made of the best and most lawful men and sufficient;" — "A law," says Sir *Edward Coke,* (1 *Inst.* 234,) "worthy to be written in letters of gold, but more worthy to be put in execution. For certainly never shall justice be duly administered, but when the officers and ministers of justice be of such quality, and come to their places in such manner, as by this law is required."

*By the Court.* The question before us is upon the sufficiency of the respondent's plea in bar, in which he sets forth a commission issued by the governor of the commonwealth, bearing date the 20th of May, 1812. The act for erecting a number of towns in the south part of the county of *Hampshire* into a separate county by the name of *Hampden,* passed the legislature on the 25th of February, 1812. But, by the last section of the act, its operation was suspended until the 1st day of August then next; no provision being made for the appointment of officers in the interim. We are all of opinion that the proceeding of the executive in this case was irregular, and that the appointment of the respondent to the office of judge of probate for the county of *Hampden,* at the time when it was made, was void. And our brother *Ashmun* seemed in his argument to concede, if it had been *res integra*, the transaction could not be supported. For it must have been under this impression that he produced the secretary's certificate of a previous similar practice. It is true that a long and uniform usage goes far to establish principles. But the precedents in this case have been on both sides of the question; and of those that were produced for the respondent, many vary in essential circumstances from the case under consideration. In none of them, except one, did a change of the chief magistrate take place between the appointment of the officers, and the actual operation of the statute under [ * 301 ] which they were to act; and in that instance the * appointments were not made until after the change had intervened.

Although the change of the individual exercising the office of governor has no legal operation in the case, yet it may be considered

as the cause why proceedings of this kind have not been instituted.

No public inconvenience need be apprehended from the principle established by this decision. For so long as the persons were *de facto* officers under such an appointment, their official acts were lawful, (*a*) except only in cases of direct injuries to their fellow-citizens, — an exception which cannot apply to one acting in the office of judge of probate. But it is always in the power of the legislature to provide against this inconvenience, and to prevent all question upon the subject, by authorizing the appointments before the act creating the county is to come into operation; as, indeed, has been done in several instances.

Two objections have been pressed upon our consideration, which have received the attention, on our part, to which, as well from their own nature as from the zeal and seriousness with which they were urged by the respondent's counsel, they were entitled.

The first is the want of jurisdiction in this Court in a case of this kind. If this Court has not jurisdiction in the case, it must follow that there is no remedy; and a very important branch of the law is left without any means of execution. But we are well satisfied that our jurisdiction extends to the case. As the Supreme Judicial Court, we must have authority, whenever a wrong takes place, to redress it, either by appeal or by process originating here.

The other objection is, that an information of the nature of that before us in this case, does not lie against an officer appointed by the supreme executive authority of the commonwealth. And it is said that as the executive have the exclusive right of appointing, so it must have exclusively the right to determine when a vacancy in office exists, the filling of which appertains to that branch of the government; the * executive being a branch of [ * 302 ] the sovereignty of the commonwealth, equally independent with the judiciary.

Our government is founded on principles not known to the laws of any other country. The sovereignty of the commonwealth remains in the people. The several departments of the government, the legislative, the executive, and the judicial, are the agents of the people in their respective spheres. When the legislature enact a law, not authorized by the Constitution, it is the part and the duty of the judiciary to declare it void. When the executive, in any act or appointment, overleaps the bounds prescribed to it by the Constitution and the laws, it is alike the part and the duty of the judiciary

---

(*a*) [Vide *Fowler* vs. *Beebe*, 9 *Mass. Rep.* 231, and the cases referred to in the note to that case. — *Arundel* vs. *Arundel*, *Yelv.* 34. — *Tyler* vs. *Duke of Leeds*, 3 *Stark. N P. C.* 218. — *Andrews* vs. *Lynton*, 1 *Salk.* 265. — 2 Lord *Raym.* 884. — ED.]

to pronounce such act or appointment null and void. Where one is charged with usurping an office in the commonwealth, there must be authority in this Court to inquire into the truth of the charge. The party charged has a right to require that this inquiry be made by a jury of the country, so far as it shall involve facts.

For this purpose, the law has furnished the process used in the present case, and has called the respondent to show by what warrant he claims to hold and exercise the office of judge of probate for the county of *Hampden.* In answer to this process, he has produced his commission ; and this would have been an abundant answer to the information, if there had been at the time such an office as judge of probate for the county of *Hampden,* and a vacancy in the office. But it appears to us that such was not the existing state of things. The appointment appears to us to have been made without constitutional and legal authority. We are bound, then, to declare it void, and we adjudge respondent's plea bad and insufficient.

*Ashmun* then moved in arrest of judgment, and the cause was continued.