## COMMONWEALTH vs. ADRIAN SHAW.

When the warrant for a town meeting, and the return thereon, are inserted in the town records, with the proceedings of the town at the meeting, those records are evidence of the holding of the meeting, and the original warrant need not be produced.

When a warrant for a town meeting, to be held on Monday, directs the officer to warn the inhabitants by posting up a copy of the warrant eight days, and at least over two Sundays, before the time of holding the meeting, the return of the officer, that he posted up a copy of the warrant eight days before the time of holding the meeting, is sufficient; as the return shows that the copy must have been also posted over two Sundays.

When a warrant for a meeting of the inhabitants of the town of A. is directed, for service, to F., constable of the town, his return of proper service is sufficient, if it be signed " F., constable," without adding " of A."

Upon an indictment on Rev. Sts. c. 4, § 8, for giving false answers to the selectmen who presided at a meeting for the election of officers, or for wilfully voting at such meeting, without being qualified, it is not necessary to prove that the selectmen were legally chosen and qualified; it is sufficient, if it be proved that they were acting as selectmen.

It is no cause for arresting judgment on an indictment for giving false answers to selectmen, and for voting wilfully, without being qualified, for governor, lieutenant governor, and senators for the district of M., that it is not alleged that the district of M. is in the Commonwealth.

An allegation, in an indictment for illegal voting, &c., that a meeting of the inhabitants of the town of A. was duly holden, is proved by evidence that a meeting of the inhabitants of A., who were qualified to vote, was duly holden.

An indictment on the Rev. Sts. c. 4, § 8, for wilfully giving false answers to selectmen presiding at an election, alleged that such false answers were given by the defendant with the fraudulent intent to procure his name to be placed on the list of voters, *and* to obtain permission to vote. The evidence was, that the defendant's name was on the list of voters, when he gave the false answers. *Held*, that the allegation of the intent to procure his name to be placed on the list of voters could not be rejected as surplusage, and that there was a material variance between the allegation and the proof.

THE indictment against the defendant was framed on the Rev. Sts. c. 4; the first count on § 6, and the second on § 8. The first count alleged, that the defendant, on the 8th of November 1841, at Tewksbury in the county of Middlesex, " at a town meeting of the inhabitants of said Tewksbury, at the election of governor and lieutenant governor of said Commonwealth, and of senators for the district of Middlesex, then and there duly holden, well knowing himself not to be a qualified voter, did wilfully give in a vote for the officers aforesaid, being the officers to be then and there chosen," &c. The second count alleged, that the defendant, on the said 8th of November, " at Tewksbury

in said county, at a town meeting " [repeating, as to the meeting and its purposes, the words in the first count,] " being then and there inquired of by the selectmen of said Tewksbury, presiding at said meeting and election, whether he, said Shaw, had paid any tax assessed upon him within two years next preceding said election, within any town or district in this State, to wit, the Commonwealth aforesaid, did then and there wilfully give a false answer to said selectmen, namely, that the said Shaw had paid a tax assessed upon him in the city of Lowell, in said county, within two years next preceding said election, to wit, a tax assessed to him in said Lowell in the year 1840 ; whereas, in truth and in fact, said Shaw had not paid any such tax, so assessed upon him in said Lowell, in the year 1840 ; and the said inquiry was then and there made of said Shaw for the purpose of ascertaining his right to vote at said election, and said false answers were returned by him, said Shaw, then and there fraudulently intending to procure his name to be inserted on the voters' list of said town, and to obtain permission then and there to vote at said election," &c.

The trial was in the court of common pleas ; and the judge who presided at the trial, made the following report thereof : One Foster was called as a witness in behalf of the Common wealth, who testified that he was town clerk of Tewksbury ; and he produced one of the books of the records of said town, as he averred. The defendant objected to parol evidence of the clerk's official capacity. Said book was then offered in evidence, which purported to contain a copy of a warrant, as recorded, for calling the meeting at which it was alleged that the defendant voted. The defendant objected to this record or copy of the warrant, and insisted that the original should have been produced. The defendant also objected to the legality of the meeting, because it appeared by said warrant, that the pre-- cept to the officer was to warn the inhabitants by posting up a copy of said warrant eight days, and at least over two Sundays, before the time of holding the meeting, and because it appeared, by the officer's return thereon, only that he had posted up the notice eight days before the time of holding. The defendant

5*

also objected to the evidence of the warrant, because it was evidence of " a meeting of the inhabitants of Tewksbury qualified to vote," whereas the allegation in the indictment was of " a meeting of the inhabitants of Tewksbury." The defendant also objected to the return of the warrant, because it was signed by " E. Foster, constable," without stating of what town or district; the warrant being directed " to the constable of Tewksbury."

Caleb Livingston and Enoch Foster were then called as witnesses for the Commonwealth, and testified that they were acting selectmen of Tewksbury, at the time of said election. To this evidence the defendant objected, because the record of their election was not produced, nor any evidence of their qualification as such selectmen.

All the foregoing objections, which were made as to the first count in the indictment, were also made as to the second count. A further objection was taken, as to the second count, viz. that it appeared in evidence that the defendant's name was on the list of voters, at the time of his giving the alleged false answers, and that there was therefore a variance which entitled him to an acquittal on that count.

These several objections were overruled by the court, and the evidence was permitted to go to the jury, who found the defendant guilty. To these several rulings the defendant alleged exceptions.

The defendant also filed a motion in arrest of judgment, because it did not appear, from the indictment, that the district of Middlesex, for which senators were to be elected at the meeting mentioned in the indictment, was in this Commonwealth.

*B. F. Butler,* for the defendant. The copy of the warrant for the meeting was not admissible in evidence. *Tuttle* v. *Cary,* 7 Greenl. 426. *Thayer* v. *Stearns,* 1 Pick. 109. The return of the service of the warrant was defective, as the person who served it did not sign it as constable of Tewksbury. *Kellar* v. *Savage,* 5 Shepley, 444. *Perry* v. *Inhabitants of Dover,* 12 Pick. 206. The several variances between the allegations and

the proof were such as to entitle the defendant to an acquittal. Perhaps no authorities precisely in point can be found ; but such is the strictness required in criminal proceedings, that either of those variances was fatal ; especially that which relates to the second count only.

No counsel appeared for the Commonwealth.

WILDE, J.    At the trial of this case in the court of common pleas, several exceptions were taken to the rulings of the court, upon which the defendant moves for a new trial.

In the first count in the indictment, the defendant is charged with giving in his vote for governor, lieutenant governor, and senators for the district of Middlesex, at a town meeting of the inhabitants of Tewksbury, duly holden for that purpose ; he knowing that he was not a qualified voter in the said election. The first objection in support of the motion for a new trial is, that it was not proved by competent evidence, that the said town meeting was duly holden, as alleged, because a copy of the warrant for calling the meeting was admitted in evidence, which was not the best evidence, and that the original should have been produced.    The answer is, that the •warrant was duly recorded, and that the records of the town, which were given in evidence, containing a copy of the warrant, were competent evidence of the proceedings of the town, and of the warning of the meeting.    And of this we have no doubt.    It is the usual evidence in such cases.    *Briggs* v. *Murdock*, 13 Pick. 305.    *Williams* v. *School District in Lunenburg*, 21 Pick. 75. *Houghton* v. *Davenport*, 23 Pick. 235.

The next objection is, that it does not appear that the inhabitants had been warned as directed by the warrant; because the officer was directed to warn the inhabitants, by posting up a copy of the warrant " eight days, and at least over two Sundays, before the time of holding the meeting ; " and that the return did not show that the copy was posted up over two Sundays, as directed.    But we think this does appear with sufficient certainty.    The officer certifies in his return, that he had posted up the notice required, eight days before the time of holding the meeting ; and as the time of holding the meeting

was on Monday, eight days before must have included two Sundays.

It is also objected that the selectmen, who presided in the meeting, were not proved to have been legally chosen and qualified ; but it does appear that they were acting selectmen, which is sufficient. The official acts of officers *de facto*, in conformity to the duties appertaining to their office, are held lawful when no one is thereby injured. *Commonwealth* v. *Fowler*, 10 Mass. 301.

Other objections, have been made, founded on an alleged variance between the evidence and the facts laid in the indictment, only one of which appears to be material.

In the second count, the defendant is charged with giving a false answer to a question propounded to him by the selectmen, for the fraudulent purpose of procuring his name to be inserted on the list of voters of the said town ; and by the report of the evidence it appears that the defendant's name was already on the said list, at the time said false answer was given. We are of opinion that this variance is material, and that the allegation cannot be rejected as surplusage. If the defendant's intention, as laid in the indictment, were thus rejected, it would not appear, except argumentatively, that the false answer charged was within the meaning and purview of the statute ; for certainly the defendant is not liable for every false answer he might give to the selectmen, but for such only as the statute was intended to prohibit. The words of the statute, (Rev. Sts. *c.* 4, § 8,) on which the second count is framed, are, " if any person shall wilfully give any false answer to the selectmen or moderator, presiding at any election, he shall forfeit, for each offence," &c. Generally, the *quo animo*, with which an act is done, is material, as well as the *quo modo*, and must be truly stated. And in charging an offence against a statute, it is not always sufficient, in all cases, to pursue the words of the statute. Thus in an indictment for obtaining money or goods by false pretences, the indictment must state what the false pretences were. *Mason's case*, 2 Leach, (3d ed.) 554. So for maliciously killing cattle, the species of cattle must be specified

Archb. Crim. Pl. (1st ed.) 24. So in an action against a party for bribery, it is not sufficient to allege the offence in the words of the statute, that the defendant did receive a gift or reward, without specifying what he received as a reward. *Davy* v. *Baker*, 4 Bur. 2471.

In *Jenks's case*, 2 East P. C. 514, the defendant was charged with breaking, &c. the house of J. D., with intent to steal the goods of J. W.; and it appeared in evidence that no goods of J. W. were in the house, but that his name had been inserted, by mistake, for that of J. D. It was held, that the words " of J. W." could not be rejected as surplusage; the words being sensible and material; it being material to lay truly the property in the goods, and the defendant's intention in breaking and entering the house.

If the intention with which an act is done be material to constitute the offence charged, such intention must be truly laid in the indictment; and it must be laid positively; and the want of a direct allegation of any thing material, in the description of the substance, nature, or manner of the offence, cannot be supplied by any intendment or implication whatsoever. Any variance, therefore, in this respect, between the allegations in the indictment and the evidence, is fatal. 2 Hawk. *c.* 25, § 60.

For these reasons, we are of opinion that the defendant is entitled to a new trial, unless the district attorney should elect to enter a *nolle prosequi* as to the second count; in which case judgment may be rendered on the first count.

A motion was made in arrest of judgment, but we think t very clear that this motion cannot be sustained.

*New trial nisi.*