## TWOMBLY vs. KIMBROUGH.

A sheriff having sold certain lands for taxes, and having afterwards taken an assignment of one half of the lands so sold from the purchaser to himself, the sheriff was properly made a party to a bill filed by the original owner of the land to set aside the tax sale.

The answer of the purchaser at the tax sale having set up that the transfer from himself to the sheriff was rescinded soon after it was made; this was matter in avoidance which the defendant must prove.

But it could not be proved by the sheriff, he being a necessary and proper party, and interested.

The bill having charged that the sheriff and the purchaser were parties in the purchase, and jointly interested therein, and the answer stating that there was no partnership at the time of the sale, but that the assignment to the sheriff, was made afterwards, and not in pursuance of any previous understanding the answer herein was directly responsive to the bill, and being uncontradicted by testimony, stands as if proved.

Twombly vs. Kimbrough.        [DECEMBER

A tax deed is by law evidence of the truth of its own recitals.

General averments of fraud amount to nothing unless the facts constituting the charge are distinctly and specifically averred; and unless also those facts do in law and fact constitute fraud.

Though any sheriff who is concerned in the purchase of any lands at a tax sale, is liable to a penalty of five thousand dollars, to be recovered by indictment, yet when the bill merely charges that the sheriff was interested in the purchase of certain lands, without any allegation that by the combination between the sheriff and the purchaser, it was intended to prevent competition in bidding, or that such was the effect, or that any other person did bid, or desire to bid for themselves, this does not amount to a charge of fraud.

The collector for a particular year is the only officer authorized to collect the taxes for that year; and although his term of office expires before the day fixed for the sale of lands for such taxes, he alone can make such sales. He may do this himself or by his deputy,

It is only when the collector has *died* or been *removed* from office, or is otherwise *disqualified* to act, that the actual collector can sell in such case.

Any judicial sale made by any person or officer other than the one authorized by law to make it, is void.

Lands having been assessed for taxes for 1856, and the tax book for that year given to one collector; and the lands sold by another collector in 1857, the former collector being alive and not disqualified from selling at the time of such sale, the sale was void.

In this case the collector who made the sale had been the deputy of the former collector to whom the tax book had been delivered, but as the sale was not made by him as such deputy, but as collector of 1857, the sale was void.

Plaintiff filing a bill to set aside a tax sale, offered therein to pay whatever amount of taxes the defendants might have paid on the lands, with proper interest and other dues; the court below, in granting the relief sought by the bill, should have ordered that these sums and the value of any improvements made on the lands by the defendants should be brought into court by the plaintiff.

*Appeal from Arkansas Circuit Court in Chancery.*

Hon. JOHN C. MURRAY, Circuit Judge.

GARLAND & RANDOLPH, and HUTCHINSON, for appellant.

Opinion prepared by A. PIKE ESQ.—See *note*, page VIII.

This cause comes to us by appeal from the circuit court of Arkansas county in chancery.

In 1856, William A. and Buckley Kimbrough were joint and equal owners of fractional sec. 7, in township 7 south, of range 5 west, and the fractional north-east quarter of section 12, in township 7 south, of range 6 west; the two tracts containing together, 691.25 acres. Buckley Kimbrough had for several years lived on and cultivated the land. William A., his co-tenant and partner, was a non-resident of the county.

The individual interest of William A. was assessed for taxation in 1856, for the taxes of that year, as the property of a non-resident. The taxes being unpaid, this interest, with other lands of non-residents was advertised to be sold at the regular time in March, 1857, for the taxes, penalty and costs: but the advertisement not being published in time, the county court, on the 19th of January, 1857, on motion of George W. S. Cross, sheriff of the county, made an order that "the sheriff of the county" should be and thereby was empowered and authorized to advertize, in some newspaper printed in the state, "the non-resident lands in the county," to be sold on the fourth Monday of April, 1857; and gave "said sheriff" time until the first Monday of May to file his delinquent list.

The lands were advertised accordingly, in a newspaper published at Helena. William A. Kimbrough's interest in the lands mentioned was returned as sold to Benjamin Twombly; and G. W. S. Cross, sheriff of the county, gave him a certificate, dated 27th of April, 1857, certifying that at such sale, that day made, Twombly purchased the undivided half of each tract, (345.50 acres in all,) assessed and taxed in the name of W. A. Kimbrough, a non-resident of the county, for the sum of $41.54, aggregate amount of taxes, penalty and costs. On the 20th of October, 1858, the successor of Cross executed and acknowledged a deed to Twombly for the same premises, under that tax sale.

William A. and Buckley Kimbrough, in April, 1859, exhibited their bill in the Arkansas circuit court, praying that the purchase of Twombly might be set aside and the certificate and deed canceled. In October, 1859, Twombly and Cross, who were made

defendants, answered the bill. It is unnecessary to state in detail the allegations by which the bill impeaches the sale. It alleges that the lands " were never listed, assessed and advertised in the way and manner prescribed by law for tax sales in the state of Arkansas." It makes several averments, which are denied by the answer and not sustained by proof, and it relies on two special grounds of objection, which may be better stated as they appear on the whole record.

The first is that George W. S. Cross had no power or authority to make the sale. He was elected sheriff on the first Monday of August, 1856, to succeed his brother, P. P. Cross, whose deputy he had been by regular appointment, duly approved and recorded, from the 7th of April, 1854. P. P. Cross was collector of the revenue of 1856, having made the necessary affidavit and given the necessary bond ; and G. W. S. Cross was collector for 1857, having made the affidavit and given bond. He sold as sheriff the lands in question, for the taxes of 1856. The former sheriff was still living ; and the question is, whether the power to sell was vested in him, or in the former sheriff.

The second ground of objection is that the sale was fraudulent. On the certificate of purchase by Twombly is this indorsement, dated the 2d day of May, 1857, five days after the purchase : " For and in consideration of the sum of twenty dollars and seventy-seven cents, to me in hand paid, I hereby transfer unto G. W. S. Cross, one half or an equal interest in and to the within described lands, in the event the same is not redeemed, and in the event the same be redeemed, the one half of the proceeds arising therefrom to be paid to the said Cross." This bears Twombly's signature, and the bill alleges that Twombly was not present at the sale and did not bid for the land ; that Cross had them struck off as sold, and so marked in the minutes of the sale, the words " to Benjamin Twombly," being afterwards added : that Cross and Twombly were partners in the purchase, and the latter never paid more than one half of the sum said to have been bid ; and that therefore the sale was fraudulent and void.

The answer denies that Cross was interested with Twombly at the time of the sale, and alleges that Twombly himself bid for the lands; that the subsequent transfer was not made to carry out a previous understanding; and that soon afterwards the purchase by Cross of one half of Twombly's interest was rescinded by the parties and the sum paid by Cross to Twombly repaid.

Cross was properly made a party defendant since this transfer showed a joint interest in him, which would enable him to compel, in equity, a conveyance to him by Twombly of one half the interest purchased and held by him under the sheriff's deed. The averment in the answer, as to the rescission of this purchase and transfer, was strictly matter in avoidance, put in issue by replication, and amounting to nothing unless proven by the defendants. It was attempted to prove it by the testimony of Cross himself. But he being a party, and a necessary and proper one, and interested, was incompetent to testify; and his deposition was both taken and read with full reservation of all objections on the score of competency. As it is impossible to doubt that he was properly made a party, and equally impossible to doubt that, as a party in interest he was incompetent to testify, we cannot understand why his deposition was not disregarded, nor with what propriety it was permitted to be read at all, that it might uselessly encumber the record and occupy time and space in the discussion here.

Upon the proof in the cause, which consists of the testimony of the clerk of the court, who attended the sale and kept the minutes of it, and of the crier who sold the lands, as auctioneer, the facts are: that Twombly *was* present at the sale, but did not himself bid. The lands in question and many others were struck off and noted as sold; Cross, when they were cried, saying "sold," or that there was a bid, the clerk noted them as sold, and Cross himself afterwards added the words "to Benjamin Twombly." Five days afterwards, Twombly assigned to Cross, by transfer endorsed on the certificates, one half of the lands or of the interest in them purchased by him, precisely for one half of the sum

bid and paid for them; but the deeds were made by Cross' successor to Twombly alone. There is no proof of any recision of the sales made by Twombly to Cross. The averments in the answer, that there was no partnership at the time of the sale; that the purchase of Cross was made subsequently, and not in pursuance of any previous understanding, being directly responsive to the bill and uncontradicted by testimony, stand as if proven.

The bill alleges, generally, that on account of this joint interest the sale was fraudulent and void; but it is not shown, by the averment of any other irregularity or informality, *how* this connection between the sheriff and the purchaser, if it existed, made the sale fraudulent. It is not alleged that by means of it, Kimbrough was in any way injured, or what fraud the purchasers perpetrated. True, it is alleged that the land was not legally listed, assessed and advertised. But this the answer traverses, and the deed of the sheriff is by law evidence of the truth of its own recitals, (*if the sale was made by the proper officer,*) and recites the listing, assessment and advertisement of sale of the land, in accordance with law. The advertisement, though not proven by copy, is proven orally by the witnesses; and no attempt was made by the complainant to rebut the proof made by the deed itself. It is not alleged that by the combination between the sheriff and purchaser, it was intended to prevent competition or bidding, or that such was the effect, or that any other person did bid or desired to bid for the land; and therefore if all the averments of fact in the bill had been proven they would have failed in establishing the fraud alleged; though, under section 128, chap. 148, of the Revised Statutes, the sheriff would have been liable to a penalty of five hundred dollars, to be recovered by indictment. General averments of fraud or fraudulent intent, in the use of which bills are sometimes so liberal, amount to nothing, unless the facts constituting the charge are distinctly and specifically averred; and unless, also, those facts do in law and fact constitute fraud. It is admitted that the taxes had not been paid on the interest of William A. Kimbrough in the lands.

They had been regularly listed, assessed and placed on the tax-book. The proper amounts of tax, penalty and costs were charged, and the owner was a non-resident of the county. Necessarily the land had to be sold, and it *was* sold at the proper time and place, and after due advertisement. That A bought instead of B, if the land was in any event to be sold to some one or struck off to the state, was not a fraud on the owner, though against public policy, and punishable as a misdemeanor. Still less is the allegation of fraud sustained, when it is not proven that the sheriff was " directly or indirectly concerned in the purchase."

If there had been any other irregularity, with which the sheriff's interest in the purchase could be connected, the interest of the sheriff, if proven, would become of the utmost importance, because it would supply evidence of a sufficient and powerful motive on his part to deprive the owner illegally of his lands ; and it would, in any case, lead a court of equity to scrutenize the sale more closely, and to regard any irregularity as more significant and important. The testimony in the case goes a good way to show that there was only the form of a fair sale at auction, and that not only was there in reality no competition in bidding, but it was so managed as to prevent competition, Cross saying, when the lands in question and others were put up, that there was a bid for them, or they were sold, and they being at once so noted, and this, although some fifty or sixty persons were present ; but notwithstanding that the testimony produces this impression, it is not sufficient to establish actual fraud in the sale. We do not decide whether the fact, if it was fully proven, that the officer was directly interested in the purchases, would or would not invalidate the sale, because that fact is not proven, though the circumstances, notwithstanding the broad denials of the answer, which are always to be looked for in such cases, are exceedingly suspicious.

The court below decreed the relief prayed by the bill. Whether that decree was proper must depend on the question first stated : whether the sale was made by the proper officer, by law author-

ized to sell; that is, whether the old or new sheriff was the proper officer to make the sale.

By the law in force at the time, each sheriff was ex-officio collector of taxes within his county, for two years, commencing on the first day of January next after his election: and was required to give bond each year, by the 10th day of January, conditioned according to law. P. P. Cross filed such bond in 1856, and performed the duties of assessor. His assessment list was required to be filed by the 15th of April, and to be adjusted by the county court in April; thirty days after which the tax-book was required to be delivered to the collector. It is not disputed that the tax-book was so delivered to P. P. Cross.

Upon it was necessarily endorsed a warrant, commanding him to collect the taxes on all the property assessed in it, in the manner and by the proceedings prescribed by law, and to pay over the same in the manner and within the time prescribed by law.

The collector's delinquent list was to be acted upon by the county court on the 3d Monday of March, in each year, it being made out by the same collector who had been unable to collect portions of the taxes; and collectors were to settle their accounts with the auditor by the first day of May.

Sales of lands for taxes were required to be made on the second Monday of March in each year. On or before the first Monday of December in each year 'the collector of revenue' in each county was required to make out and file in the clerk's office a list of lands belonging to non-residents of the county; and at least four weeks before the second Monday of March to publish this list in some newspaper with a notice of sale: he was to have this list recorded; and by himself or deputy attend and make the sale, and make out and deliver certificates to the purchasers. If from any cause he failed to make such sale at the proper time, the county court could order him to sell them on another day, after twenty days' notice by publication in some newspaper in the state.

In *Gossett vs. Kent,* 19 *Ark.,* 602, this court decided that the

assessment list, when adjusted by the county court, is in the nature of a judgment; and the warrant attached to the tax-book in the nature of an execution. By the statute, *sec.* 106, *chap.* 148, all taxes on lands, with penalties and interest, are levied on the lands charged, until payment or forfeiture. This levy dates at least from the date of the warrant.

The collector, therefore, holding the tax-book and warrant, commanded to collect the taxes on all the property assessed, and bound by his bond to do so and to pay over the same, stands in the same attitude as if he held an execution against an individual, and had levied it upon lands. By the general law as to *executions, sec.* 7, *chap.* 68, where an officer had levied on land by virtue of any execution, and his term of service expired, and was determined before sale, he was empowered to make the sale, in all respects as if his term of service had not expired. In the absence of other and overruling provisions to the contrary, this must be held to govern in regard to the sales of lands for taxes. This, reason, analogy and consistency all require, more especially as the provision is but in affirmance of the common law in regard to the powers of sheriffs.

There are no provisions to the contrary; but all that bear upon the question favor this construction.

If the new sheriff must sell, because the term of the former collector expired on the 1st day of January, then it results that each sheriff, serving one full term and no more, must sell the lands charged with the unpaid taxes of the year of his election, though his predecessor assessed them that year, gave bond for their collection, and holds the tax-book; and *he* cannot sell those charged with the unpaid taxes of the second year of his term, though he assessed the lands, gave bond to collect the taxes and holds the tax-book. He holds the execution, nevertheless, and no law authorizes him to deliver it to his successor; and if he pays into the state and county treasuries the full amount of state and county tax with which he may stand charged, on or before the time prescribed by law, he can proceed to collect the taxes so

paid by him, for three years after such payment, in the same manner as other taxes are collectable; that is, by sale or otherwise, though his term of office may have expired. And, by law, he is not required to pay over the county revenue until the 25th of May, nor the state revenue until after the auditor has settled his account, which he is required to file by the first day of May.

Again, by the chapter on executions, the ex-sheriff could not only sell lands levied on by him while he was in office, but he could also execute deeds for the same. *Sec.* 132, *of chap.* 148, changes this, as to the execution of the deed for lands sold for taxes, by authorizing the collector actually in office to make the deed, where the collector who sold has ceased to be collector by expiration of his term of service after sale of the lands; but no change is made as to the power of the collector holding the taxbook to make the sales. As to that, then, the general law must be held to govern.

And in the several provisions directing the different steps to be taken, from first to last, beginning with the assessment and ending with the sale, the language construed according to its natural and obvious meaning, indicates that the " collector," who is to do the several acts, is one and the same person. He is not to file his list of non-resident lands until the fourth Monday of December, though his term of office expires on the first Monday in January, thereafter. *He* is to set up a copy of the list at the court house door, and publish it in a newspaper. The sale *is to* be made on the second Monday of March by *him* or his deputy; and to give him time to do this, and because the collector for 1856, for example, could not complete his collection of the taxes until that sale, he was not required to pay over either the state or county revenue until the latter part of May.

We are clear, therefore, that the collector for a particular year is the only officer authorized and empowered to collect the taxes for that year; and that although his term of office expires before the day fixed for the sale of lands for those taxes, he alone can make such sales. He may do this himself, or by deputy.

In *Hogins vs. Bradshears*, 13 *Ark.*, 242, it was held that a sale for taxes "made by an ex-collector, after the expiration of his term of office," was invalid; for that, and also because it was made on a day other than that, and after that, fixed by law, without any order of the county court directing it to be made on such other day. In that case the taxes due were for the year 1842. Abraham Sinclair, the assessor and collector for that year, assessed the lands and received the tax-book, and died in July, 1842. On the first day of August, 1842, William Adams was commissioned sheriff and received the tax-list. His term of office expired, and after that he made out and filed the list of nonresident lands in May, 1843, and sold them on the 1st of July, 1843.

By the general statute, *sec.* 72, *chap.* 68, when an officer *dies*, after taking land in execution, and before sale, the sheriff in office is to proceed with the execution and make the sale. Sinclair having died, Adams could sell, *while he remained in office*; but as he had not taken the land in execution, or done any act whatever, until he ceased to be sheriff, his successor alone, the actual sheriff, could by law make the sale. The decision in that case was, therefore, correct, and so was the general expression used in the opinion, when confined to the given case. But that case was entirely different from the present, and the decision does not in the least conflict with the conclusion to which we have arrived. P. P. Cross had not died, when this sale was made, and the provisions of the statute are different in the different cases. It is only when the sheriff making the levy has *died*, or been *removed* from office, or is otherwise *disqualified* that the actual sheriff can complete the execution of the process.

Any judicial sale, made by any person or officer other than the one authorized and empowered by law to make it, is void. It is not, in such case, the act of the law, from which alone it can derive validity. In this case the sale was not made by P. P. Cross, who was collector in 1856, but by G. W. S. Cross, sheriff elected in August, 1856, and who became collector for 1857,

on the first day of January in that year. It was therefore null and void.

But it is urged that G. W. S. Cross was the deputy of P. P. Cross; that the objection that he acted in his own name and right as sheriff, and not as deputy, is a technical one, hardly tenable any where, and certainly not in a court of equity; that the only question should be, whether G. W. S. Cross was authorized to sell, at the time and in the manner in which he did, and not whether he was authorized to sell in the particular capacity he assumed, or by which he described himself; that if he was in fact authorized to sell, it worked no injustice that he sold as sheriff; and that if he was in fact authorized to sell, it does not matter, substantially, whether he sold as deputy or principal. For, it is said, the bidders at the sale had nothing to do with his official description of himself, and are not to be held responsible for it.

The argument is ingenious and plausible, but unsound. Undoubtedly the courts ought not to exercise their ingenuity to invent obstacles to defeat sales for non-payment of taxes, or to regard these sales as iniquitous, and support them only when it is impossible to do otherwise. For though it is true, as has been judicially said, that purchasers at tax sales obtain acres for cents, yet that ought never to have made the courts acute to seek out and anxious to sustain objections to such titles. There can be no free government without revenue; the imposition and collection of taxes is the exercise of the highest powers of sovereignty; and one of the first duties of the citizen is to bear cheerfully the light burthens and pay promptly the equitable and equal taxes imposed on his property by the government of his choice; and if the taxes are small, and the lands on which they are charged valuable, so much the more reason why he should pay them promptly, and so much the less cause he has for complaint, if, in consequence of failure to pay, he loses his lands.

But, nevertheless, in this as in all other proceedings that alone is valid which is done legally, and especially that which is done

by the proper officer by law empowered to do it. It is true that if G. W. S. Cross was empowered to sell, his mistake in describing the capacity in which he sold might not be material. But *he* was *not* authorized to sell. The sheriff of the former year was the only officer authorized; and the whole case affirmatively shows that *he* did not sell, but that the sheriff actually in office did. That the latter was also deputy of the former, and made the sale does not prove that the former did it. If the certificate purported to be given by P. P. Cross, by his deputy, it would be presumed, in this collateral proceeding, that the latter was authorized by his general powers as deputy, or by special deputation, to make the sale, and the court would look no further. It is not alleged in the answer, or proven by the testimony, that he sold as deputy, or, more accurately, that P. P. Cross made the sale, by him as deputy. A certificate of sale given by him as deputy, in his own name, like a return on a writ so made, would be worthless. Made by him as sheriff, it is at least equally so; for it even excludes the conclusion that he did the act as deputy. No attempt is made to reform the certificate; and it is clear from the pleadings and proof that G. W. S. Cross, in his own right as sheriff, advertised the lands and made the sale.

A deed made by an attorney in fact in his own name is worthless. It must be made in the name of the principal. It is worthless though made by the attorney in fact for the owner of the land on its face. And even if it could be enforced against the principal, in equity, as virtually his agreement, certainly that could not be done, if the attorney in fact conveyed in his own name, as owner of the land, under a title conflicting with that of the principal, however plausibly it might be urged that he really was attorney in fact of the principal, and *could* have sold and conveyed for *him*. The deed could not be, at one and the same time, *his* deed and his principal's. The argument here is not that G. W. S. Cross *did* make the sale as deputy of P. P. Cross, but that he *could* have done so, if he pleased. Now even that does not appear. If he could have done so, the legal pre-

sumption is that he would have done it; and if P. P. Cross supposed that the legal power to make the sale was not in himself, of course he did not authorize G. W. S. Cross, though previously his deputy, to do it for him. Nor did the latter, supposing as he did that he had himself power to sell, as sheriff, act as deputy of his brother, or deem that his deputization extended to this sale.

The question is not what *person*, but what *officer*, made the sale. If A, authorized to make a sale as sheriff, and being sheriff, had made it in some other official capacity, there would be reason to urge that the court should regard the description as a mistake, and that he should be presumed to have made it in the only legal capacity in which he could do so. But this is not that case. He had no authority to make it at all; and having made it as sheriff, his general deputization does not prove that he *could* have made it, or had the right to make it, as deputy for P. P. Cross. If he had done it as deputy, his general deputization would be presumed to have continued. As he did not, it must be presumed to have expired when he and P. P. Cross supposed the powers of the latter as collector to have terminated. When he declared that he was acting, not as deputy, but in his own right as sheriff, we should be going a great way in order to support this title, to hold that, without other evidence, we must infer that he acted as deputy for another.

It is the official character of the sheriff, and not of his deputy, the oath of office of the sheriff, that gave his acts validity, conclusiveness and sanctity. It is *his* return that cannot be impeached. It is because the sheriff's certificate of purchase, the certificate of purchase given by the officer who made the assessment and advertisement, is deemed by law conclusive, like a return, as to the facts that constitute the regularity of the proceedings prior to the sale, and at the sale, that his deed is made evidence, and that even the deed of a subsequent collector, who knows the facts from the certificate alone, is evidence of the truth of all its recitals. The law attributes no such dignity or sanctity to the certificate or deed of a deputy. The sale in this

case had not for its regularity the guarantee of the proper collector's oath of office. It was not the act of the law by her sworn minister, authorized to make it. It was not an official act at all; but that of an unauthorized individual, not commissioned *quoad hoc* by the state. It is not as where one does an act which he may legally do in one capacity and cannot do in another; in which case the law and courts presume, in the absence of proof to the contrary, that he did it as he legally could, and not as in law he could not. For here that presumption is excluded by the broad fact that Cross did not pretend to act as deputy, but in his own character as sheriff, the former sheriff being in no wise bound by or responsible for his acts, nor accountable for the moneys received by him, nor entitled to the commissions, nor lending his official sanction to the sale, nor vouching, under the obligations of his oath of office, for its regularity.

The deed of the subsequent sheriff states that George W. S. Cross advertised the lands; that *he* sold them; that Twombly paid *him* the money bid, and that *he* gave Twombly the certificate. To infer, in the face of this deed, that George W. S. Cross, sheriff of Arkansas county, did not make the sale, but that Pleasant P. Cross, ex-sheriff, by G. W. S. Cross his deputy did, would be to falsify and destroy the deed. The certificate, changed and amended by parol testimony, would not support the deed.

And it may be added, that as the deed shows that the advertisement and sale were made by an officer not authorized to sell, it is not evidence of the truth of the recitals, or of the regularity of the different steps taken. It recites an illegal sale, and cannot be aided by parol evidence which contradicts it. By the deed and certificate as they are, the purchaser must stand or fall.

The order of the county court could not confer the power to sell on an officer not authorized by law to sell. If it meant to confer it on G. W. S. Cross, it was so far null; and, in ordering the sheriff to sell, it must be presumed to have intended merely to direct that the sale should be made by the officer authorized

by law to make it. It was not a judgment, not to be collaterally drawn in question. If it had undertaken to decide that an officer not authorized by law should sell, it would have acted without jurisdiction, and its order have been so far *coram non judice.*

We need not undertake to decide whether a sale of lands for taxes, made by a collector *de facto,* would be valid, like other acts done by judicial and other officers *de facto.* This court, in *Scott vs. Watkins,* 22 *Ark.,* 556, indicated its disinclination to agree to the doctrine of the supreme court of the United States, in *Parker vs. Overman,* 18 *Howard,* 137; that the acts of an assessor, who had not made the required affidavit, were void. The increase in the number of the judges of that court beyond reasonable limits, and the continual recurrence of dissenting opinions had, many years since, greatly lessened its authority; and we should not bow with unhesitating submission to its decision on a question arising under our own statutes. We see no reason why the general principle as to the acts of officers *de facto* should not apply to those of assessors and collectors. But G. W. S. Cross was not, *quoad hoc,* the collector *de facto.* An officer *de facto* is one who comes into the particular office by color of title. And the acts of such an officer are valid, as it concerns the public, or third persons who have an interest in his acts. *The People vs. Collins,* 7 *Johns.,* 549; *The People vs. White,* 24 *Wend.,* 525; *The People vs. Stevens,* 5 *Hill,* 616. You cannot assail his title to the office collaterally. The official acts of an officer regularly appointed, though not regularly qualified, are valid in respect to third persons. *Bucknam vs. Ruggles,* 15 *Mass.,* 180; *Mason vs. Dillingham, id.,* 170; and while a person holds an office, that of sheriff, for instance, his doings are deemed valid. *Fowler vs. Beebe,* 9 *Mass.,* 231; *Commonwealth vs. Fowler,* 10 *Mass.,* 290; *Doty vs. Gorham,* 5 *Pick.,* 487.

But G. W. S. Cross was sheriff and collector *de jure,* as to the taxes of 1857. As to those of 1856, the office of collector was still filled by P. P. Cross, and G. W. S. Cross did not hold it by color of title; nor claim to be sheriff under any election, appoint-

ment or commission prior to August, 1856. He could not be collector *quoad hoc*, when that office was held by another, whose title he could not dispute, and whose deputy he had been. He simply undertook in another capacity, an act which another person, still for that purpose holding the office, could alone perform. If the argument were valid, it would not only warrant a new collector in selling lands, in every case, for taxes of the year for which he was not collector; but a new sheriff in selling lands levied on by his predecessor, who was still living and alone invested by law with the power to sell. The principle relied on is based on considerations of public policy; and only protects rights gained under the action of persons in possession of offices, and apparently in legal possession. The public peace, and justice to individuals alike require the maintainance of the principle. But G. W. S. Cross only assumed to act in a character of which he was legally in possession, and under a commission and authority which did not give him the power to do the act. He never assumed to be what he was not. If he had assumed to be sheriff and acted as sheriff, not being legally so, and being liable to be ousted on *quo warranto*, and if, being what he assumed to be, he could, as such, legally have made the sale, then he would have been, as to that, collector *de facto*, and the sale would have been valid. But he did not assume to possess any appointment or commission under which he could legally do the act.

We cannot hold that the original owner of land cannot impeach a tax sale until he has paid the taxes. To whom and how could he pay them, after the sale? He could but tender them to the purchaser: for the state and county already have them in their treasuries. He must tender them before filing his bill, and again by his bill. The affidavit required by *section 7, chap.* 106 *of the Revised Statutes*, was made and filed before the 29th of April, 1859; and no motion to dismiss the suit for want of it was made.

The relief prayed by the bill was properly grantable by the court below. But the bill offered to pay whatever amount of taxes Cross and Twombly might have paid on the lands, with

the proper interest and other legal dues; and even if the owner seeks to redeem lands sold for taxes within the year allowed by law, he must pay or tender twice the sum bid and paid by the purchaser, for taxes, penalty and costs, and the true value of any improvement made on the lands by the purchaser; and of course, the relief sought could only be had when what the complainant had tendered, or should have tendered, should have been paid into court, with interest, and with any other taxes paid by the purchaser or defendants on the same premises, after the purchase, and interest on such sums, and the value of any improvements made.

The decree must therefore be reversed and the case remanded, with directions to the court below to enter a decree interlocutory, for the taking an account before the master, wherein shall be stated: first, the sum of eighty-three dollars and eight cents, with interest at six per cent. per annum from the 27th day of April, 1858; second, all such taxes as the defendant Twombly may have paid on the lands, since the purchase, with like interest from the time of payment of each; and third, the value of any improvement on the land made by the defendants or either of them; and upon the payment into court by the complainants, of the sum so found to be due, upon confirmation of the master's report, the court below is further directed to render a decree declaring the sale of said lands by the said sheriff null and void, and canceling and annulling the certificate of purchase, and the sheriff's deed obtained thereunder, and quieting the title of the complainants. The costs in this court to be paid by the appellees, and those in the court below by the appellant.